JOHN H. GRAHAM v. RESERVE LIFE INSURANCE COMPANY.

(Filed 14 June 1968.)

**1. Insurance § 43.1—**

A hospital expense policy in which the insurer agrees to pay "expense actually incurred" contemplates expenses for which the insured has become legally liable.

**2. Insurance § 44— Recovery allowed on hospital expense policy for tuberculosis treatment in State hospital.**

Plaintiff was admitted as a paying patient for treatment of tuberculosis at a state sanatorium and was told that he would be charged, and expected to pay, the standard rate of $10.00 per day which all patients are charged. Collection of sanitorium accounts is made on the basis of the patient's current ability to pay under a policy adopted by the board of directors pursuant to statutes requiring the hospital to admit patients regardless of ability to pay and providing that patients who are able must pay for treatment received. G.S. 131-54, G.S. 131-79. *Held:* Plaintiff is

legally obligated to the sanitorium for treatment received and may recover upon an insurance policy in which the insurer agreed to pay plaintiff for certain hospital expenses actually incurred.

**3. Insurance § 43.1—**

Where the insuring clause provides that the insurer will pay the insured for certain items of hospital expense actually incurred, notations on the back of the policy and on the top of the first page that the policy provides benefits for "loss due to hospital confinement" do not change the contract from one of insurance against liability to one of indemnity for expenses actually paid.

**4. Insurance § 44; Constitutional Law §§ 13, 20—**

The policy and practice of a State tuberculosis sanitorium of charging all patients the same rate but collecting from each according to his current ability to pay and requiring patients who have hospital insurance to pay the amount of such insurance *is held* not an unconstitutional discrimination between citizens who have been patients at the hospital entitling an insurer of such a patient to avoid liability upon a hospital expense policy, it being within the police power of the State to provide treatment of tuberculosis for those who cannot afford it in order to protect all its citizens from this highly infectious disease.

HUSKINS, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Copeland, S.J.,* June 1967 Non-Jury Assigned Civil Session of WAKE, docketed and argued at the Fall Term 1967 as Case No. 534.

Action to recover $600.00, the maximum benefit provided by a policy of hospital and surgical insurance issued to plaintiff by defendant. The following facts were stipulated:

Defendant corporation is engaged in the business of writing and selling hospital and surgical insurance in North Carolina. On 12 November 1949, it issued to plaintiff its policy (No. R-409687), which was in force at all times relevant to this suit. After the issuance of the policy. plaintiff contracted tuberculosis. He was necessarily confined to Eastern North Carolina Sanatorium at Wilson (Eastern) from 10 August 1961 until 16 September 1961, and from 28 September 1961 until his final discharge on 23 July 1962, a total period of 336 days. Plaintiff has complied with all policy requirements in respect to notice and proof of loss.

The policy provisions applicable to hospital-expense benefits resulting from sickness provide:

"PART I. If the Insured or any member of the Family Group shall be necessarily confined within a recognized Hospital as a resident patient on account of such injury or such sickness, the Company will pay the Insured (or the Hospital if authorized by the In-

sured to do so) for the following items of hospital expense actually incurred but not to exceed the amounts stated below:

"A.   HOSPITAL ROOM, including meals and general nursing care, not to exceed Six Dollars ($6.00) per day, for the period that the Insured or member of the Family Group shall be confined therein, but not to exceed One Hundred Days as the result of any one accident or sickness.

"* * *

"The Company will pay only the usual, customary and regular charges for the services and materials stated above, and the maximum amounts specified in this Part 1. . . ."

On the outside of the policy and also at the top of the first page above the label, "Hospital and Surgical Expense Policy," and above defendant's name and address, there appears this notation: "This policy provides benefits for loss due to hospital confinement and for other specified expense resulting from accidental bodily injury, sickness, or childbirth, to the extent herein limited and provided."

Eastern is one of the four units of the North Carolina sanatorium system, in which tubercular patients are accepted regardless of their financial condition. Approximately two-thirds of all patients are certified by the counties as welfare patients and pay nothing for services rendered them. The county in which the patient resides, however, pays the sanatorium sixty cents per day.

During plaintiff's hospitalization, Eastern's charges were controlled by a resolution of the board of directors of the North Carolina sanatorium system, which provided in part: "(2)(a) that the accrued total of the bill for regular medical and hospital services rendered to . . . in-patients . . . shall be computed at a standard rate of $10.00 per day, based on cost which exceeds the Sanatorium System's average per diem patient cost . . . and (3) that the following collection policy shall be applicable:

"(A)   No allowance shall be granted as a discount on the accrued total of the bill of any patient who is financially able to pay the total bill.

"(B)   An appropriate allowance, based on the patient's financial condition, shall be granted and applied as a discount on the accrued total of the bill of each patient who is financially unable to pay the full bill. It is intended that discretion shall be exercised in analyzing a patient's financial condition and in determining an appropriate allowance. If a patient has hospital insurance, it shall be considered as one of the several factors that make up his whole financial picture. By taking all factors into consideration, including in-

surance, it shall be determined how much the patient is able to pay per day; then the allowance shall be set as the difference between (a) the accrued total of the bill and (b) the amount which the patient is able to pay. The patient's financial condition shall be reviewed periodically and the allowance revised accordingly."

The parties waived a jury trial. Both plaintiff and defendant offered evidence which was without material conflict. That offered by plaintiff tended to show: Plaintiff was admitted as a paying patient. He was informed that he would be charged, and expected to pay, the standard rate of $10.00 per day, which all patients — welfare, indigent and nonindigent — are charged. This charge was set by the board of directors after determining the average daily patient cost by dividing the total number of patient days into total sanatorium expenditures exclusive of physical improvements. This actual cost was $10.16. The $10.00-charge included room, meals, medical care, laboratory work, x rays — everything. Eighty-three percent of the charge, or $8.30, represented room and board.

Ledger cards are maintained for each patient, and all but welfare patients are billed monthly. Welfare accounts are handled by billing the respective counties at $ .60 per day. The difference of $9.40 appears on the patient's card as a balance due, but no effort is made to collect it from the welfare patient unless he thereafter becomes able to pay.

All patients, when they enter the hospital, are informed that they must pay the full $10.00-rate if they are able; if they are not, that they are expected to pay as much as they can, and that any unpaid balance will be a debt which they are expected to pay as soon as they are able to do so. When a patient claims inability to pay the full charge, a financial statement is taken to determine the amount he can currently pay. In determining a patient's ability to pay, Eastern's administrator considers a patient able to pay the amount for which he has insurance. Only about five percent pay their total bill. Eastern and the other sanatoriums in the system are largely supported by appropriations made by the General Assembly.

Eastern charged plaintiff $10.00 a day for 336 days. He owes the hospital $3,360.00, no part of which has been paid, although bills have been sent to him and defendant periodically. If defendant pays the amount of its policy, $600.00 will be entered as a credit on plaintiff's total bill.

Defendant's evidence, in addition to showing the facts detailed above, tended to show: The ledger card of each patient is totaled at the 15th of each month. No effort is made to itemize charges or expenditures; all entries are at the $10.00 per day standard rate irre-

spective of the care required by the particular patient. Collections are made on the basis of the patient's current ability to pay as determined by the hospital administrator after investigation. Once this amount is determined — be it $1.00, $5.00, or $10.00 — the patient is periodically reminded of the payments he agreed to make. On plaintiff's application for admission to Eastern, he listed his wife as his only dependent and his assets as follows: the hospital insurance policy in suit; railroad retirement income of $228.00 a month; real estate, $20,000.00; household furniture, $3,000.00; Cadillac automobile, $4,000.00.

Defendant's motions for judgment of nonsuit, made at the close of plaintiff's evidence and again at the close of all the evidence, were denied.

Judge Copeland found the facts to be in accord with those delineated above. *Inter alia,* he specifically found: (1) During the 336 days plaintiff was a patient at Eastern, he was charged $10.00 a day, "the usual, customary, and regular charges" for the services he received. (2) Of the standard rate of $10.00 a day, $8.30 was for meals, room, and general nursing care. (3) Plaintiff actually incurred hospital expenses of $3,360.00 during his stay at Eastern. Upon these findings, he adjudged that plaintiff is legally obligated and indebted to Eastern in the sum of $3,360.00. Under its policy of insurance "defendant is liable to plaintiff for hospital room expense benefits" of $6.00 per day for 100 days, a total of $600.00.

From judgment that plaintiff recover of defendant the sum of $600.00 with interest at 6 percent per annum from September 15, 1962 until paid, defendant appealed.

*Teague, Johnson, Patterson, Dilthey & Clay for plaintiff appellee.*
*Young, Moore & Henderson for defendant appellant.*
*Attorney General Bruton and Staff Attorney Denson for the State, amici curiæ.*

SHARP, J. Defendant's denial of liability to plaintiff is based upon the contentions (1) that plaintiff has *incurred* no expense for his hospitalization at Eastern because it is a State hospital where "he was entitled to receive, and did receive, treatment and maintenance free of charge"; (2) that its policy is a contract of indemnity against loss, and plaintiff has shown no out-of-pocket expense; and (3) that to the extent Eastern attempts to collect from some patients and not from others, or to collect varying amounts for the same services, "Such policy creates an unwarranted discrimination" between citizens of the State who are, or have been, patients at

Eastern and is in violation of the 14th Amendment to the Constitution of the United States and Sections 7 and 17 of Article I of the Constitution of North Carolina.

Defendant's contract is to pay plaintiff the "usual, customary, and regular charges" for "hospital expenses actually incurred" for a "hospital room including meals and general nursing care," not to exceed $6.00 a day and for not more than 100 days. The first question for determination, therefore, is whether plaintiff actually *incurred* expenses during his hospitalization at Eastern.

Webster's Third New International Dictionary-Unabridged (1961) defines *incur:* "to meet or fall in with (as an inconvenience); become liable or subject to: bring down upon oneself (incurred large debts to educate his children) (fully deserving the penalty he incurred)." This definition was quoted with approval by this Court in *Czarnecki v. Indemnity Co.,* 259 N.C. 718, 720, 131 S.E. 2d 347, 349. See also *Reliance Mutual Life Insurance Co. of Ill. v. Booher,* 166 So. 2d 222 (Fla. Dist. App.); 42 C.J.S. 552 (1944).

In considering the meaning of *incurred* as used identically in a policy issued by this same defendant, the Supreme Court of Mississippi in *Reserve Life Insurance Co. v. Coke,* 254 Miss. 936, 943, 183 So. 2d 490, 493, adopted the following definition from *Irby v. Government Employees Insurance Co.,* 175 So. 2d 9 (La. App.):

"'As used in the policy in suit the word "incurred" emphasizes the idea of liability and the definition of "incur" is: "To have liabilities (or a liability) thrust upon one by act or operation of law"; a thing for which there exists no obligation to pay, either express or implied, cannot in law constitute an "incurred expense"; a debt or expense has been incurred only when liability attaches. *Drearr v. Connecticut General Life Insurance Co.,* La. App., 119 So. 2d 149; *United States v. St. Paul Mercury Indemnity Co.,* 8 Cir., 238 F. 2d 594; see also *Stuyvesant Insurance Co. of New York v. Nardelli,* 5 Cir., 286 F. 2d 600, 603,' 175 So. 2d at 10." *Accord, Maryland Casualty Co. v. Thomas,* 289 S.W. 2d 652 (Tex. Civ. App.); *Hermitage Health and Life Insurance Co. v. Cagle,* 420 S.W. 2d 591 (Tenn. App.).

Eastern is a State hospital for the treatment of tuberculosis. It was established by P. L. 1939, ch. 325, now G.S. 131-76 through G.S. 131-82. It is controlled by the same board of directors which controls North Carolina Sanatorium at McCain and Western North Carolina Sanatorium at Black Mountain, G.S. 131-77, G.S. 131-62. These directors have the same duties, powers, and obligations in connection with the operation of Eastern which they have in connection with the other sanatoria. G.S. 131-78. They are specifically directed by

G.S. 131-79 to operate Eastern by regulations which "shall make said sanatorium as nearly self-supporting as shall be consistent with the purposes of its creation."

G.S. 131-54 prohibits the directors from making any regulation which would exclude any tubercular patient, otherwise eligible for admission to a sanatorium, on account of inability to pay for treatment. However, it also directs them (1) to "require of all patients who are able, including those having persons upon whom they are legally dependent who are able, to pay the reasonable cost of treatment and care of said institution" and (2) to "make such bylaws and regulations as shall most equitably carry out the directions" that the institution shall be as nearly self-supporting as shall be consistent with the purpose of its establishment.

In the event a person able to pay, or a person upon whom a patient is legally dependent, refuses to pay the charges for treatment and care, G.S. 131-54 authorizes the directors to institute a suit in the name of the sanatorium for the collection of the unpaid bill, and, upon the trial, "the charges so made shall be collectible, as upon express promise to pay the same."

Tuberculosis, a highly infectious disease, is a major public health problem, which the State has attempted to solve by the establishment of four sanatoria. Since the disease most often attacks the indigent, any control of the disease would be impossible if isolation and treatment were available only to those who could pay for it. To protect the citizenry, the State must furnish treatment for those who cannot provide it for themselves. Notwithstanding, it is the declared public policy that all who receive treatment at any of the hospitals in the State sanatorium system are indebted to the State for it and that all who can pay must pay. G.S. 131-54, G.S. 131-79. Realistically, the General Assembly has not required the directors to reduce the indebtedness of an indigent to judgment, but it enjoined them to "require" payment from all patients who are able to pay the cost of their treatment. Should a solvent patient refuse to pay his bill, the directors are authorized to sue in the name of the sanatorium as upon the patients' "express promise to pay."

Clearly, plaintiff is liable to Eastern in the amount of $3,360.00 for the treatment he received there. He was admitted as a nonindigent patient and told that he would be charged, and expected to pay, $10.00 a day. Like all other patients similarly situated, he was required to disclose his resources. His retirement income was not enough to pay the hospital charges. He had other property, however, and his hospital-expense policy with defendant was an asset. *In Re: Edmundson*, 273 N.C. 92, 159 S.E. 2d 509.

From the decided cases which have considered this question the general rule seems to be that a hospital-expense policy, in which the insurer agrees to pay "expense actually incurred" will cover expenses for which the insured becomes legally liable. If he never incurs any liability for his hospital bill — as where hospital care is furnished him solely upon the promise of a third party to pay for it or as a matter of right, without charge and without future obligation contingent upon his ability to pay — the policy does not cover the bill.

In *Reserve Life Insurance Co. v. Coke, supra,* the defendant issued its health and accident policy "providing indemnities against hospital and surgical expense actually *incurred,* not to exceed $6.00 per day." The plaintiff's wife (also covered by the policy) became a patient at the Mississippi State Sanatorium at Magee for 52 days. The hospital billed the plaintiff at $6.00 a day; the defendant refused to pay more than $21.00 a week. Since Mississippi law provided that "there shall be collected from patients in the State sanatorium not less than $5.00 per week, nor more than $21.00 per week, according to the patients' 'ability to pay,'" when the plaintiff sued on the policy, the Mississippi court agreed with the defendant that its liability was limited to $21.00 per week because (1) the sanatorium was restricted by law to a maximum charge of $21.00 a week; and (2) insured incurred no legal liability in excess of that sum. The court made it quite clear, however, that within its limits the policy covered the expenses for which the policyholder had become legally liable. See also *Collins v. Farmers Insurance Exchange,* 271 Minn. 239, 135 N.W. 2d 503, in which the court said, "The definition of incur is 'to become liable for,' as distinguished from actually 'pay for.'" *Id.* at 244, 135 N.W. 2d at 507.

Defendant relies upon the case of *United States v. St. Paul Mercury Indemnity Co.,* 133 F. Supp. 726 (D.C. Neb.), *affirmed* 238 F. 2d 594 (8th Cir.). In that case, a veteran of World War II, who was stricken with poliomyelitis, was admitted to a VA hospital where he remained a year. At the time he had a poliomyelitis expense policy issued by defendant "for expenses actually incurred" for hospital and medical care not to exceed $5,000.00. The insured assigned his rights under the policy to the Veterans Administration and the government brought suit when the defendant refused to pay the sum of $3,796.69. The District Court dismissed the government's action upon the ground that, under the law (38 U.S.C.A. § 706), the insured was entitled to receive, and did receive, such treatment without cost. He, therefore, had incurred no expenses, and the government could have no greater rights under the policy than the insured

himself. *Accord, Drearr v. Connecticut General Life Insurance Co.*, 119 So. 2d 149 (La. App.); *Gordon v. Fidelity & Casualty Co. of N. Y.*, 238 S.C. 438, 120 S.E. 2d 509; *Reserve Life Insurance Co. v. Coke*, 254 Miss. 936, 183 So. 2d 490; *Irby v. Government Employees' Insurance Company*, 175 So. 2d 9 (La. App.). *Cf. State Farm Mutual Automobile Ins. Co. v. Fuller*, 232 Ark. 329, 336 S.W. 2d 60; *American Indemnity Co. v. Olesijuk*, 353 S.W. 2d 71 (Tex. Civ. App.).

In *Protective Industrial Ins. Co. of Alabama v. Gray*, 40 Ala. App. 578, 118 So. 2d 289, the State Rehabilitation Department of the State of Alabama contracted with a private hospital to operate on the insured's hand. The insured herself paid nothing on the bill and made no contract with the hospital for payment. Furthermore, no statute imposed any liability upon her for the hospital charges. In a suit on her hospital policy, the court held that, "where there exists no obligation on the part of the plaintiff below, express or implied, to pay anything, the plaintiff cannot be heard to assert a claim for 'items of actual hospital expense.' " *Id.* at 580, 118 So. 2d at 291.

Even if plaintiff's indebtedness to Eastern be conceded, defendant contends that the notation on the outside of the policy and at the top of the first page limits its liability to the *reimbursement* of plaintiff for hospital bills which he has actually paid. This contention is entirely untenable. The contract between plaintiff and defendant is found in the insuring clause of the policy and the parts to which it refers. These provide that "the Company will pay the Insured (or the hospital if authorized by the Insured to do so) for the following items of hospital expenses actually incurred. . . ." With that language in the body of the policy, the notation on the back and at the top that "it provides benefits for loss due to hospital confinement" cannot change a contract of insurance against liability to one of indemnity for expenses actually paid. If defendant intended this limitation upon its liability it should have so specified in the policy. *American Indemnity Co. v. Olesijuk, supra.* Furthermore, an insured who had already paid his hospital bill would not direct defendant to make payment to the hospital. *Hermitage Health and Life Insurance Co. v. Cagle, supra.* See *Casualty Co. v. Angle*, 243 N.C. 570, 91 S.E. 2d 575. A policy which covered only bills the insured was able to pay would be inadequate coverage indeed.

Defendant's third and last contention is that the "policy and practice of Eastern North Carolina Sanatorium violates both the United States Constitution and the Constitution of North Carolina" because it collects "different amounts from different people," and

"[i]f a patient has hospital insurance, he is expected to pay whatever the insurance policy will pay." To borrow a phrase from *Hermitage Health and Life Insurance Company v. Cagle, supra* (a case in which the defendant made the same contention under the same circumstances) "this most unusual and novel defense" has no merit. It is within the police power of the State to provide treatment for infectious and contagious diseases, which — if untreated — can become epidemic. 16 Am. Jur. 2d *Constitutional Law* § 308 (1964). Germs attack both the affluent and the indigent. Therefore, in order to protect all its citizens, the State must — in the first instance, at least — provide treatment without cost to the indigent. It does not follow, however, that it must also furnish free treatment to those who are able to pay or who have had the forethought to purchase insurance to cover the cost of hospitalization. Such a contention is least expected from those who, under other circumstances, decry the expansion of the welfare state and urge medical and hospital insurance with private corporations as a bulwark against socialized medicine. It seems entirely unnecessary to say that the law makes no unconstitutional discrimination between classes when it charges all tubercular patients the same rate but actually collects from only those who can pay.

All the evidence in this case tends to establish the facts found by the court. From these facts, it follows as a matter of law that plaintiff incurred indebtedness to Eastern in the amount of $3,360.00 and that defendant is liable to plaintiff for the sum of $600.00, the policy limit. The judgment of the Superior Court is affirmed.

We have reached the conclusion that plaintiff himself is liable to Eastern for the total amount of his hospital bill without reference to Article 7 of Ch. 143 of the General Statutes, which was enacted as ch. 120, P. L. 1925. By unmistakable legislative oversight the names of Eastern North Carolina Sanatorium at Wilson, Western North Carolina Sanatorium at Black Mountain, Gravely Sanatorium at Chapel Hill (and perhaps some other institutions established since 1925) have not been added to the list of State institutions contained in G.S. 143-117. Included, however, is the North Carolina Sanatorium at Sanatorium (now at McCain), and there is no reason to suppose that the legislature intended to show any difference between the patients of the four sanatoriums. Indeed, its specific declarations are to the contrary.

Affirmed.

HUSKINS, J., had no part in the decision or consideration of this case.