## No. C-906

**Marvin E. Schleiger and Margaret Schleiger v. State of Colorado, Colorado State Hospital, Charles E. Meredith, M.D., Superintendent**

(568 P.2d 441)

Decided August 29, 1977.

Davis, Graham & Stubbs, Arthur E. Otten, Jr., Richard W. Daily, for petitioners.

J. D. MacFarlane, Attorney General, Jean Dubofsky, Deputy, Joe T. Ulibarri, Regional Assistant, for respondents.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

We granted certiorari to consider whether the state may take into account one's insurance coverage in determining "ability to pay" for state hospitalization costs pursuant to sections 27-12-101, *et seq.*, C.R.S. 1973. We hold that under the applicable statutes the state may do so, and therefore we affirm the decision of the Colorado Court of Appeals in *State v. Schleiger*, 37 Colo. App. 195, 547 P.2d 1295 (1975).

The Schleigers' minor daughter, Pamela, was hospitalized at the Colorado State Hospital. During the period of hospitalization, Mrs. Schleiger, through her employer, was covered by group insurance which provided for reimbursement of hospitalization expenses incurred by her on behalf of her dependent children. She and her employer both contributed to the premiums for this insurance.

The State Hospital, acting pursuant to the controlling statute,[1] determined that the *actual costs* incurred during Pamela's hospitalization were $5,240.86. Had the Schleigers been uninsured, the amount for which they would have been liable after determining their "ability to pay" according to the statute would have been $332.23.[2] Recognizing the Schleigers' insurance coverage, however, the state allowed certain credits not at issue here and then assessed them for $4,729.79.

Although the Schleigers' insurance carrier was not a party to this action, as it certainly could have been, counsel conceded at oral argument that the company will honor its contract and pay the contested amount if the Schleigers are held liable.

The Schleigers contend that their insurance coverage should not be considered in determining their "ability to pay." In other words, they insist that their insurance only *indemnifies* them for hospital expenses after they are incurred, and that no obligation is finally incurred until the state has (1) determined the actual costs of hospitalization, (2) determined their "ability to pay," taking into account income and other factors, but not insurance, and (3) assessed them according to that ability to pay. Thus they argue that since their ultimate liability — had they not had insurance — would have been $332.23, the state cannot assess them for more by reason of the insurance coverage, even though the insurance would cover the full hospitalization costs. Finally, the Schleigers assert that even if insurance

---

[1] 1969 Perm. Supp., C.R.S. 1963, 71-7-2, now section 27-12-102, C.R.S. 1973.
[2] The state admitted this during pre-trial discovery.

coverage normally should be considered in determining "ability to pay," the policy at issue here should not be so considered because it specifically excludes coverage for any charges imposed solely because of the existence of the insurance. We cannot accept this reasoning.

I.

The Court of Appeals' analysis is the most reasonable rationale available within the statutory framework set out in sections 27-12-101, *et seq.*, C.R.S. 1973, and that analysis needs little clarification by this Court.

Simply stated, the statutory provisions establish the following process:

1. Liability to pay for the care of patients at the hospital is created by section 27-12-101, C.R.S. 1973.

2. An *actual cost* determination is made regarding each patient. Section 27-12-102, C.R.S. 1973.

3. In determining "ability to pay" for actual costs, or a portion of them, the department of institutions is required to consider as "available for payment" of the actual costs thus determined all "insurance and other benefits payable. . . ." Section 27-12-104(1), C.R.S. 1973.

4. The *balance* of those costs not covered by insurance are passed on to the patient and his spouse, who are assessed according to their ability to pay (determined by income and other factors). Section 27-12-104(2), C.R.S. 1973.

5. Any remaining costs not charged to the patient or spouse are charged to the patient's parents, based on their ability to pay. Section 27-12-104(3), C.R.S. 1973.

6. An assessment is to be made against persons found able to pay. Section 27-12-103, C.R.S. 1973.

Thus, the initial *liability* is for the actual cost of the care provided, and is incurred as the day-to-day expenditures are made. Nevertheless, under the statutory scheme, the State forbears from collecting that portion of the actual costs which exceeds the ability to pay when there is no insurance. *See Graham v. Reserve Life Insurance Co.*, 274 N.C. 115, 161 S.E.2d 485 (1968). The statute clearly provides, however, that when there *is* insurance, the available limits are to be exhausted for payment of all costs *before* the uninsured balance to be collected directly from the patient is reduced in consideration of the patient's limited ability to pay.

This construction does not depart from our previous holding that these determinations and the assessments based upon them are conditions precedent to collection. *Estate of Randall v. Colorado State Hospital*, 166 Colo. 1, 441 P.2d 153 (1968). That case was decided before the statute required insurance to be taken into consideration in determining ability to pay. Here we are simply recognizing the statute's added requirement that the state apply insurance proceeds to the costs of hospitalization before reducing the patient's liability for payment.

The rationale here approved not only carries out the obvious legislative intent,[3] but also applies a rule that is fair not only to the state, but to the insurer and the insured as well. There is no evidence in the record that the insurance carrier charged lower premiums to those with very limited financial resources and therefore very limited ''ability to pay'' if their insurance were not applicable. In effect the Schleigers seek an interpretation which would allow the company to provide less coverage under the same policy for poor persons than for wealthy persons. Yet the policy terms and premiums are apparently the same for both.

The bottom line issue, therefore, is whether in circumstances such as those here presented, expenses of treatment at a state hospital are to be paid by the company which sold the policy or by the taxpayers. If the Schleigers' child had been treated in a private hospital rather than in the State Hospital, there would be no question raised: the insurance company would pay to the extent of its coverage. That was its contract for which it accepted the premiums. The fortuitous circumstances that the child was treated in a state institution rather than a private one should not produce either a windfall for the company or a burden for the taxpayers.

It seems obvious that the very purpose of the insurance was to provide the insured with an "ability to pay" hospitalization expenses. Therefore, it would be incongruous not to consider the existence of insurance in determining the insured's "ability to pay."

## II.

The Schleigers also maintain that even if insurance proceeds were to be considered, nevertheless coverage was excluded in this case by the following clause in the policy:

"No payment will be made under this policy for expenses incurred by an Employee or Dependent. . . .

"5. for charges which the Employee or Dependent is not legally required to pay or for charges which would not have been made if no insurance

---

[3]We are not unaware that the 1976 General Assembly clarified the law to assure that the interpretation we here reach will be applied from and after July 1, 1977. This was accomplished by Colo. Sess. Laws 1976, ch. 47, 10-8-123 at 383, in the following language:

"*Benefits at state institutions.* (1) On and after July 1, 1977, no individual policy or group policy of sickness, health, or accident insurance delivered or issued for delivery to any person in this state which provides coverage for mental illness, mental retardation, or both shall exclude or be construed to diminish benefits for the payment of the direct costs, related directly to the treatment of such mental illness, mental retardation, or both provided by a state institution, including community clinics and centers for mental health and mental retardation services, if such charges for treatment of such mental illness, mental retardation, or both are customarily charged to nonindigent patients by such state institution.

"(2) Any policy issued on or after July 1, 1977 on a form approved prior to said date, containing any provisions in conflict with the provisions of this section shall be in effect only if there is attached to such policy at the time of issue a rider or endorsement amending such policy to conform to the provisions of this section." (Now section 10-8-123, C.R.S. 1973 (1976 Supp.)).

coverage had existed. . . ."

The Schleigers contend that the term "charges" (not defined in the policy) meant the *assessment* made pursuant to section 27-12-103, C.R.S. 1973, rather than the actual costs of the patient's treatment.

The Court of Appeals thoroughly analyzed the policy language and correctly rejected the Schleigers' argument, leaving nothing to warrant further consideration of this issue here.

Accordingly, the judgment of the Court of Appeals is affirmed.

MR. JUSTICE HODGES, MR. JUSTICE KELLEY, and MR. JUSTICE LEE dissent.

MR. JUSTICE KELLEY dissenting:

I respectfully dissent.

The majority opinion imputes to sections 27-12-101, *et seq.*, C.R.S. 1973, a state policy and legislative intent that were not present in the statute until the General Assembly enacted Colo. Sess. Laws 1976, ch. 47, 10-8-123 at 383, section 10-8-123, C.R.S. 1973 (1976 Supp.). If the General Assembly had intended that in determining ability to pay for costs of treatment at a state mental institution health insurance policies could not be excluded, it could as easily have expressed such a policy when it enacted sections 27-12-101, *et seq.* It did not elect to do so until it enacted section 10-8-123 in 1976, and I am reluctant to apply such an explicit intent retroactively, which is the effect of the majority opinion.

Further, I would reverse the court of appeals on the basis of *stare decisis.* In *Estate of Randall v. Colo. State Hospital,* 166 Colo. 1, 441 P.2d 153 (1968), we held that this statute's predecessor was to be strictly construed as it was in derogation of the common law. The present statute contains no express or implicit statement of public policy abrogating the right of an insurance company to limit its liability where the insured or a dependent is a patient in a state hospital. Also, the majority opinion's interpretation of the statute results in the impairment of the insurance contract in violation of Article II, Sec. 11, of the Colorado Constitution.

The exclusion clause in Schleiger's insurance policy provides:
"No payment will be made under this policy for expenses incurred by an Employee or a Dependent

. . . .

"5. for charges which the Employee or Dependent is not legally required to pay or for charges which would not have been made if no insurance coverage had existed. . . ."

This clause must be construed with the *present* statute, clear of the penumbra of section 10-8-123, C.R.S. 1973 (1976 Supp.).

Therefore, I would reverse the court of appeals. MR. JUSTICE HODGES and MR. JUSTICE LEE have authorized me to say that they join in this dissent.