In re the ESTATES OF Richard J. NAU, Ronald Martin, Lawrence Smith Jr., Jack M. Modig, Benigo Martinez, Vincent Loggins, Morris Montoya, Benjamin J. Muniz, Joseph C. Barrientes, and Albert Fetty, through Linda Gomez as next friend, Plaintiffs–Appellants,

v.

STATE of Colorado; Marva Livingston Hammons, in her official capacity as Executive Director of the Colorado Department of Human Services; Stephen Schoenmakers, in his official capacity as Superintendent of the Colorado Mental Health Institute in Pueblo and as Representative Payee of Veterans Administration benefits for plaintiffs; and James Duff, in his official capacity as the Chief Financial Officer of the Southern District Accounting Office of the Colorado Department of Human Services, Defendants–Appellees.

No. 06CA0284.

Colorado Court of Appeals, Div. V.

Nov. 15, 2007.

Certiorari Denied May 12, 2008.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Colorado; Kathleen Mullen, P.C., Kathleen Mullen, Denver, Colorado, for Plaintiffs–Appellants.

John W. Suthers, Attorney General, Wade S. Livingston, First Assistant Attorney General, Alicia R. Calderon, Assistant Attorney General, Denver, Colorado, for Defendants–Appellees.

R. Eric Solem, Englewood, Colorado, for Amicus Curiae Elder Law Committee of the Colorado Bar Association.

Opinion by Judge TERRY.

The estates of Richard J. Nau; Ronald Martin; Lawrence Smith, Jr.; Jack M. Modig; Benigno Martinez; Vincent Loggins; Morris Montoya; Benjamin J. Muniz; Joseph C. Barrientes; and Albert Fetty appeal the trial court's judgment holding that monies received from the Veterans Administration (VA) and the Colorado Old Age Pension Program (OAP) may be applied to cover costs incurred by the protected individuals (plaintiffs) while patients at the Colorado Mental Health Institute at Pueblo (Hospital). Because we conclude that, under the Charges for Patients Act, plaintiffs' VA and OAP benefits were properly deemed available for payment of the costs of their care, we affirm the judgment in part. However, because the trial court lacked jurisdiction over plaintiffs' breach of fiduciary duty claim, we vacate the portion of the judgment addressing that claim.

## I. Facts

Defendants are the State of Colorado; Marva Livingston Hammons, in her official capacity as the Executive Director of the Colorado Department of Human Services; Stephen Schoenmakers (Superintendent), in his official capacity as Superintendent of the Hospital and as the representative payee of VA benefits for plaintiffs; and James Duff, in his official capacity as the Chief Financial Officer of the Southern District Accounting Office of the Colorado Department of Human Services.

Plaintiffs are patients at the Hospital, and reside there because they were found not guilty by reason of insanity of various criminal offenses.

All plaintiffs except Fetty receive pension benefits from the VA by virtue of their military service, and have been deemed by the VA to be incompetent to administer their benefits. As a result, the VA appointed a fiduciary to represent each of these plaintiffs in the administration of their VA benefits. The VA appointed the acting superintendent of the Hospital as the fiduciary for several of the plaintiffs.

Fetty receives Colorado OAP benefits under section 26–2–111(2)(a)(III), C.R.S.2007. His benefits are paid to the Superintendent as trustee, under the provisions of section 26–2–112(3)(a)(I), C.R.S.2007.

While plaintiffs have been patients at the Hospital, the major portion of their benefits has been paid to the Hospital to help cover costs associated with their care.

In 2005, plaintiffs sued defendants, alleging that payment of their VA and OAP benefits to the Hospital (1) violated sections 27–12–101 to –109, C.R.S.2007 (Charges for Patients Act), and section 13–54–102(1)(h) and (s), C.R.S.2007 (exempting certain pensions and retirement benefits from levy and sale under writ of attachment or execution); (2) constituted an unlawful taking of property in violation of their due process rights under the Colorado Constitution; and (3) amounted to breach of fiduciary duty.

After a bench trial, the court found in favor of defendants on all claims.

## II. Application of VA and OAP Benefits to Payment of Patient Care Charges

Plaintiffs contend that the state unlawfully confiscated their VA and OAP benefits. We disagree. Our conclusion is based upon a close reading of the Charges for Patients Act, in conjunction with the governing federal statutes and regulations, as well as the exempt property statute.

As an initial matter, because we disagree with plaintiffs that the quality of the Hospital's services is implicated by the applicable statutes, we decline to address the allegations regarding the quality of those services.

## A. Standard of Review

■ We interpret statutes de novo. *Colo. State Bd. of Med. Exam'rs v. Roberts,* 42 P.3d 70, 71 (Colo.App.2001). When construing a statute, our primary duty is to give effect to the intent of the General Assembly. *Vigil v. Franklin,* 103 P.3d 322, 327 (Colo. 2004). Accordingly, we first consider the statutory language and give words their plain and ordinary meaning. *Town of Telluride v. Lot Thirty–Four Venture, L.L.C.,* 3 P.3d 30, 35 (Colo.2000). As long as the meaning is unambiguous, we need not rely on interpretive rules of statutory construction. *Id.*

■ However, if statutory language is ambiguous, to determine its meaning we may look at other factors, such as the consequences of a given construction and the objective sought to be obtained by the statutory scheme. *Frazier v. People,* 90 P.3d 807, 811 (Colo.2004); *Grant v. People,* 48 P.3d 543, 547 (Colo.2002). "[T]he General Assembly's intent and purpose must prevail over a literalist interpretation that leads to an absurd result." *Grant,* 48 P.3d at 547 (quoting *Lagae v. Lackner,* 996 P.2d 1281, 1284 (Colo. 2000)).

## B. Charges for Patients Act

There is no dispute that plaintiffs are patients in a state hospital nor that the provisions of the Charges for Patients Act apply to them. *See Schleiger v. State,* 193 Colo. 531, 533, 568 P.2d 441, 442–43 (1977) (statutory scheme of Charges for Patients Act clearly imposes liability on persons admitted to a state hospital for the actual costs of their treatment). Rather, plaintiffs dispute the use of their VA and OAP benefits to satisfy the costs of their care incurred while patients at the Hospital.

■ Plaintiffs contend that we should look first to section 27–12–109(2), which excludes exempt property from claims under the Charges for Patients Act. Adopting plaintiffs' view would require us to read the latter portions of the Act without giving adequate consideration to the earlier sections establishing plaintiffs' liability under the Act. Because of the sequential manner in which the provisions of the Charges for Patients Act

are organized, the Act should read and its provisions applied in the same sequence in which they are numbered. *See Stefanik v. Nursing Educ. Comm.,* 70 R.I. 136, 37 A.2d 661, 664 (1944) (interpreting statute by reading pertinent chapters in sequence); *Deshotel v. Travelers Indem. Co.,* 231 So.2d 448, 453 (La.Ct.App.1970) (interpreting statute by reading relevant articles in sequence), *aff'd,* 257 La. 567, 243 So.2d 259 (1971).

We begin by analyzing section 27–12–101, which establishes that plaintiffs are liable for the costs of the services provided to them by the Hospital:

> *Liability:* When any person is ... committed ... to any public institution of this state supervised by the department of human services for the care, support, maintenance, education or treatment of persons with mental illness, the person ... *shall be liable for the costs of his or her care,* support, maintenance, and treatment to the extent and in the manner provided in this article ....

§ 27–12–101(1) (emphasis added).

Section 27–12–101(2) states that the Charges for Patients Act applies to persons who, like plaintiffs here, were placed in the Hospital under the provisions of article 8 of title 16. Therefore, under section 27–12–101, plaintiffs are financially responsible for the costs of their care. Plaintiffs' liability for such costs is incurred as the day-to-day expenditures are made. *Schleiger,* 193 Colo. at 533, 568 P.2d at 443.

Section 27–12–102, C.R.S.2007, describes how the state is to determine the costs of care.

The extent of patients' liability is determined under section 27–12–103, which provides in pertinent part:

> *Extent of Liability.* (1) There shall be assessed against the said patient ... made liable by section 27–12–101 ... all or such part of the cost as [he or she is] able to pay ....

Section 27–12–104 addresses the manner in which the state is to determine each patient's ability to pay. It provides:

> *Determination of ability to pay.* (1) All insurance and *other benefits payable for*

*the care, support, maintenance, and treatment of a patient shall be considered available for payment* of the cost determined under section 27–12–102.

> (2) The department of human services shall determine the ability of a patient ... to pay the balance of such cost by consideration of [enumerated factors].

(Emphasis added.)

Based on the premise that patients are liable for the costs of their care under section 27–12–101(1), section 27–12–103 provides that they are to be assessed the amount they are able to pay. The ability to pay is analyzed first under section 27–12–104(1), which specifies that "other benefits payable for the care, support, maintenance, and treatment of a patient shall be considered available" to pay the costs. *See Schleiger,* 193 Colo. at 533, 568 P.2d at 443 (in determining "ability to pay" under section 27–12–104(1), department of institutions is required to consider as "available for payment" of the actual costs all "insurance and other benefits payable"; the balance of costs not covered are passed on to patient and spouse, who are assessed according to their ability to pay).

Because VA and OAP benefits are payable for the care, support, maintenance, or treatment of plaintiffs, we construe the term "other benefits payable" in section 27–12–104(1) to include such benefits. Therefore, section 27–12–104(1) mandates that such benefits shall be deemed available to pay the charges.

As a result, in those instances where the Superintendent acted as fiduciary for plaintiffs, he was authorized to pay plaintiffs' liabilities to the Hospital as they arose.

## C. Exempt Property

■ Plaintiffs also contend that, under sections 27–12–109 and 13–54–102, their VA and OAP benefits are exempt from collection and were unlawfully confiscated. We disagree. Because we conclude that plaintiffs' VA and OAP benefits were properly deemed available for payment of contemporaneously incurred charges for their care, sections 27–12–109 and 13–54–102 are not applicable here.

Section 27–12–109 provides:

*Further actions.* (1) Any patient ... who fails to pay the amounts assessed pursuant to this article shall be proceeded against in any manner authorized by law for the collection of sums due and owing to the state of Colorado.

(2) All property of said persons shall be subject to application to said claims irrespective of its ... source, subject to the exemptions set forth in section 13–54–102. C.R.S.

Section 13–54–102 in turn provides:

*Property exempt.* (1) The following property is exempt from levy and sale under writ of attachment or writ of execution:

. . . .

(h) ... all money received by any person as a pension, compensation, or allowance for any purpose on account or arising out of the services of such person as a member of the armed forces of the United States in time of war or armed conflict. . . .

The phrase "fails to pay" in section 27–12–109(1) indicates that this section applies only when a patient does not pay the costs owed to the state. Further, the phrase "shall be proceeded against in any manner authorized by law" indicates that this section applies only when the state must take legal action as a creditor to obtain a judgment against a patient for payment.

In those instances where the Superintendent acted as fiduciary for plaintiffs, the patient did not "fail to pay," and therefore section 27–12–109(1) is inapplicable. And the record does not show that the Superintendent pursued levy or sale under a writ of attachment or writ of execution with respect to those plaintiffs for whom he acted as fiduciary, and therefore section 13–54–102 is inapplicable with respect to those plaintiffs.

There is some indication in the record that the Hospital sent a demand letter to the fiduciary for two of the plaintiffs in an attempt to collect from them the costs of their care. Although the parties stipulated that payments made by non-state fiduciaries would not waive any right to challenge what they characterized as the state's confiscation or misappropriation of plaintiffs' VA benefits, neither a demand for payment of costs of care nor the voluntary payment by a plaintiff's fiduciary to forestall collection activity can be considered confiscation or misappropriation by the state. Because the state did not obtain judgment against plaintiffs, and did not attempt to collect from plaintiffs through levy and sale under writ of attachment or writ of execution, as referenced in section 13–54–102, the provisions of that statute are inapplicable.

Plaintiffs rely on *State v. Estate of Butler,* 30 Colo.App. 246, 248, 491 P.2d 102, 103 (1971), to argue that exempt property in the estate of an incompetent patient is not subject to any claim by the state under the Charges for Patients Act. In that case, the state made a claim in probate court against the patient's estate, and the claim was allowed by the court, thus rendering the state a judgment creditor. A division of this court, construing a predecessor to the current section 27–12–109, held that the legislature intended to protect a patient's property from creditor claims to the same extent afforded to any judgment debtor. That case is inapposite, as it did not address the factual situation here, in which the state did not assert a claim as a judgment creditor. Instead, the claim against the state is that it confiscated plaintiffs' benefits to pay for contemporaneous care given to the patient. Additionally, at the time of *Butler,* the statute did not contain the relevant provision of section 27–12–104, deeming "[a]ll insurance *and other benefits*" to be available for payment of patient care charges.

A provision similar to section 27–12–109 was discussed by the Connecticut Supreme Court in *State v. Amore,* 205 Conn. 104, 530 A.2d 582 (1987). In that case, the state brought an action against the representative payee of social security benefits for a patient in a state-run mental institution. The representative payee argued that 42 U.S.C. § 407(1) of the Social Security Act, which provides that "[t]he right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal pro-

cess, or to the operation of any bankruptcy or insolvency law," barred the state from receiving patient's social security benefits to satisfy the costs incurred by the institution. The court acknowledged that the purpose of § 407 is to "preclude beneficiaries from directing their social security payments away from the 'seminal goal' of the social security system itself: 'furnishing financial, medical, rehabilitative and other resources to needy individuals,'" not to bar the state from reimbursement when it is providing for the current needs of the beneficiary. *Amore*, 530 A.2d at 587 (quoting *Dep't of Health & Rehabilitative Servs. v. Davis*, 616 F.2d 828, 831 (5th Cir.1980)); *see also Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 375, 392, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003) (state's use of social security benefits payable to foster care children to reimburse itself for some of state's initial expenditures on children's behalf did not violate provision of Social Security Act protecting benefits from execution, levy, attachment, garnishment, or other legal process); *Catalano v. Dep't of Hosps.*, 299 F.Supp. 166, 172–73 (S.D.N.Y. 1969) (Medicaid statutes are intended to protect benefit payments from collection for past debts, not to prevent those benefits from being used to pay for current or future maintenance).

#### D. Laws and Regulations Governing VA and OAP Benefits

Next, we analyze the regimen under which VA and OAP benefits are paid, and conclude that laws and regulations applicable to those benefits do not preclude their application to payment for plaintiffs' care.

#### 1. VA Benefits

■ Federal law limits the availability of VA benefits for the payment of certain types of claims:

Nonassignability and exempt status of benefits.

Payment of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary ... shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

38 U.S.C. § 5301(a)(1) (2003).

This statute exempts VA benefits from claims of creditors and from attachment, levy, and seizure. However, the statute, when read in combination with pertinent regulations, indicates that direct payments of VA benefits to the Hospital for ongoing patient care, as distinct from amounts derived after default in payments and pursuit of collection activities, are not prohibited or limited by federal law. *See Lawrence v. Shaw*, 300 U.S. 245, 250, 57 S.Ct. 443, 81 L.Ed. 623 (1937) (veterans benefits "payments are intended primarily for the maintenance and support of the veteran"); *Dep't of Health v. Davis*, 616 F.2d at 831.

A federal statute also dictates the manner in which payments of VA benefits are made to fiduciaries:

Where it appears to the Secretary that the interest of the beneficiary would be served thereby, payment of benefits under any law administered by the Secretary may be made directly to the beneficiary or to ... some other fiduciary for the use and benefit of the beneficiary, regardless of any legal disability on the part of the beneficiary.

38 U.S.C. § 5502(a)(1).

The provisions of title 38 of the Code of Federal Regulations govern the manner in which those fiduciary responsibilities are to be carried out. Section 13.55 provides:

(a) Authority. The Veterans Service Center Manager is authorized to select and appoint ... the person or legal entity best suited to receive Department of Veterans Affairs benefits in a fiduciary capacity for a beneficiary who is mentally ill (incompetent) or under legal disability by reason of minority or court action....

(b) Payees. Authorized payees include ...

(6) [t]he chief officer of the institution in which the veteran is receiving care and treatment (§ 13.61). . . .

38 C.F.R. § 13.55. Thus, the federal regulations specifically permit payment of VA benefits by a fiduciary for contemporaneous care and treatment of patients, in the manner in which payments were made to the Hospital here.

Payment to the chief officer of an institution is regulated under 38 C.F.R. § 13.61:

The Veterans Service Center Manager may authorize the payment of all or part of the pension, compensation or emergency officers' retirement pay payable in behalf of a veteran rated incompetent by the Department of Veterans Affairs to the chief officer of the institution wherein the veteran is being furnished hospital treatment or institutional, nursing or domiciliary care, for the veteran's use and benefit, when the Veterans Service Center Manager has determined such payment . . . will adequately provide for the needs of the veteran and obviate need for appointment of another type of fiduciary.

The record indicates the VA appointed the Superintendent of the Hospital as the fiduciary to receive payment of benefits for the use and benefit of certain plaintiffs. 38 C.F.R. § 13.71 regulates payment of veterans benefits to an institution:

(a) The payment of part of compensation, pension or emergency officers' retirement pay for the cost of a veteran's hospital treatment, institutional or domiciliary care in an institution operated by a political subdivision of the United States may be authorized as provided in paragraph (b) of this section when:

(1) The veteran is rated incompetent by the Department of Veterans Affairs.

(2) It has been determined the veteran is legally liable for the cost of his or her maintenance, and

(3) The institution's representative has asserted or probably will assert a claim for full maintenance costs.

(b) Subject to these conditions and the further condition that the responsible official of the institution or political subdivision will agree not to assert against Department of Veterans Affairs benefits any further claim for maintenance during the veteran's lifetime, the Veterans Service Center Manager may agree with such official to the payment of the veteran's benefits through an institutional award to be applied to:

(1) A monthly amount determined by the Veterans Service Center Manager to be needed for the veteran's personal use,

(1) An amount to be agreed upon to be accumulated to provide for the veteran's rehabilitation upon release from the institution, and

(3) So much of the amount of the benefit as remains not exceeding the amount the Veterans Service Center Manager determines to be the proper charge as fixed by statute or administrative regulation, to the cost of the veteran's maintenance.

Construing the VA statutes and regulations together with the Charges for Patients Act, we conclude that where the Superintendent was designated by the VA as the fiduciary for payment of plaintiffs' VA benefits, the Superintendent was permitted to receive and pay those benefits to the Hospital for plaintiffs' care while they resided in the Hospital.

### 2. OAP Benefits

■ Fetty contends that his OAP benefits are not available to cover costs incurred for his care while a patient at the Hospital. We disagree.

It is undisputed that Fetty is eligible for public assistance under the OAP program provided at section 26–2–111(2)(a)(III).

Section 26–2–112(3)(a), C.R.S.2007, directly addresses OAP benefits for inmates of public institutions and provides, in relevant part:

(I) Assistance payments under the old age pension granted to an inmate of the Colorado mental health institute at Pueblo . . . shall be paid to the chief financial officer of the institution within which the inmate is confined. Such chief financial officer shall receive and disburse such pension funds as trustee for such inmate and shall account for the

same to the state controller in the manner now prescribed by law for the handling and accounting of trust or quasi-trust funds.

. . . .

(III) It is the duty of such chief financial officer to pay monthly from the assistance payments under the old age pension, as prior claim therefrom, all lawful claims of said public institution for the care, support, maintenance, education, and treatment of said inmate in accordance with article 12 of title 27, C.R.S.

Here, the statute's plain language requires Fetty's OAP benefits to be paid to the Hospital to cover costs incurred for his care, support, maintenance, education, and treatment. *See* § 26–2–112(3)(a)(III). In addition, the statute specifically references the Charges for Patients Act and mandates that OAP benefits be applied first to payment for the patient's care at the Hospital.

Therefore, we conclude that the legislature specifically provided for the use of OAP benefits to cover a patient's costs incurred while at the Hospital.

## III. Unlawful Taking

Plaintiffs contend that the State of Colorado, by accepting their VA and OAP benefits, performed an impermissible taking of their property and thus violated their due process rights under article II, section 25 of the Colorado Constitution. *See Whiteside v. Smith,* 67 P.3d 1240, 1248 (Colo.2003). Because we conclude that application of plaintiffs' VA and OAP benefits to their care while in the Hospital did not violate Colorado or federal statutes or regulations, we also conclude there was neither an unlawful taking nor any violation of their due process rights. *See Gean v. Hattaway,* 330 F.3d 758, 769–70 (6th Cir.2003) (no taking of plaintiffs' social security benefits when Social Security Administration's regulations contemplate the payment by a state agency, as representative payee, to state-run facilities for the current maintenance and care of beneficiaries, and funds are held in a separate trust account).

## IV. Breach of Fiduciary Duty

Plaintiffs contend that by allowing their OAP and VA benefits to be paid to the Hospital to cover the costs of their care, the Superintendent breached his fiduciary duty to them. To the extent this claim has been raised by those plaintiffs for whom a fiduciary other than the Superintendent has been appointed, it lacks a legal basis. As to those plaintiffs for whom the Superintendent has been acting as fiduciary, we conclude that the Superintendent's payment of OAP benefits was not a breach of fiduciary duty. However, the state courts of Colorado lack jurisdiction to decide the issue of breach of fiduciary duty with respect to VA benefits, and we therefore vacate that portion of the trial court's judgment addressing this latter issue.

### A. OAP Benefits

Plaintiffs contend that the Superintendent breached his fiduciary duty to Fetty because he applied Fetty's OAP benefits to the Hospital to defray costs of his care. We disagree.

Section 26–2–112(3) specifies that OAP payments for inmates of the Hospital shall be paid to the chief financial officer of the Hospital, who must apply the funds in the first instance to pay costs of their care. Because the only breach of fiduciary duty claim with respect to OAP benefits was that the Hospital used them to pay for Fetty's care, and because the Hospital was statutorily required to do so, we conclude that neither the Hospital nor its employees breached any fiduciary duty to Fetty with regard to payment of such benefits.

### B. VA Benefits

Supervision of fiduciaries who receive VA benefits on behalf of veterans is governed by 38 U.S.C. § 5502(b) (2002), which states:

Whenever it appears that any fiduciary, in the opinion of the Secretary, is not properly executing or has not properly executed the duties of the trust of such fiduciary or has collected or paid, or is attempting to collect or pay, fees, commissions, or allowances that are inequitable or in excess of those allowed by

law for the duties performed or expenses incurred, or has failed to make such payments as may be necessary for the benefit of the ward or the dependents of the ward, then the Secretary may appear, by the Secretary's authorized attorney, in the court which has appointed such fiduciary, or in any court having original, concurrent, or appellate jurisdiction over said cause, and make proper presentation of such matters.... The Secretary may appear or intervene by the Secretary's duly authorized attorney in any court as an interested party in any litigation instituted by the Secretary or otherwise, directly affecting money paid to such fiduciary under this section.

Relying on § 5502 as authority, 38 C.F.R. § 13.100, entitled "Supervision of fiduciaries," states:

(a) Federal fiduciaries. In Federal fiduciary cases, the Veterans Service Center Manager may, when he or she deems it necessary for the protection of the beneficiary's interests:

(1) Require an accounting, formal or informal, of Department of Veterans Affairs benefits paid.

(2) Terminate the appointment of a Federal fiduciary and appoint a successor Federal fiduciary.

....

(c) Unsatisfactory conditions. In any case where a fiduciary fails to render a satisfactory account or has collected or paid, or is attempting to collect or pay, fees, commissions, or allowances that are illegal or inequitable or in excess of those allowed by law, or has failed to use Department of Veterans Affairs funds for the benefit of the beneficiary or the beneficiary's dependents, or has otherwise failed or neglected to properly execute the duties of his or her trust, and informal efforts by the Veterans Service Center Manager to correct the situation prove unsuccessful, the case will be referred to the Regional Counsel. In such cases[,] the Veterans Service Center Manager may have all Department of Veterans Affairs benefits suspended.

The statute and regulation were both construed in *Judkins v. Veterans Administration*, 415 F.Supp.2d 613 (E.D.N.C.2005). Noting that § 13.100, as part of the VA's implementing regulations, is entitled to substantial deference, the court then reasoned:

Although 38 U.S.C. § 5502(b) speaks of certain causes being heard in "any court having original, concurrent, or appellate jurisdiction" over the fiduciary and ward ... this provision does not itself waive sovereign immunity against the United States. Furthermore, this provision is a remnant from a time when the VA could only make payments to a legal guardian duly appointed under state law and ultimately subject to the jurisdiction of a state court. Pursuant to Title III of Pub.L. 93–295, 88 Stat. 180 (1974), however, Congress authorized the VA to make payments to a fiduciary other than a state-appointed guardian. *See* S.Rep. No. 93–798 (1974), *reprinted in* 1974 U.S.C.C.A.N. 3215, 3224. Such a "Federal fiduciary" is subject not to the immediate supervision of any court but rather is committed by statute to the supervision of the VA in the first instance.

*Judkins v. Veterans Admin.*, 415 F.Supp.2d at 619–20 (additional citation omitted).

In *Whitmire v. United States Veterans Administration*, 661 F.Supp. 720 (W.D.Wash.1986), a mentally disabled claimant brought an action challenging the legality of the appointment of the Washington State Department of Veterans Affairs as his federal fiduciary. As part of his challenge, the claimant argued that his due process and First Amendment rights were violated by the state because he was deprived of a portion of his VA benefits and was required to report to the state his desire to use his benefits to purchase religious items. Relying on statutes now codified at 38 U.S.C. §§ 7101–7112, the court declined to address the claimant's arguments because he did not exhaust his administrative remedies.

We agree with the reasoning of *Judkins* and *Whitmire* and adopt it here. Because, in the first instance, jurisdiction lies with the

VA to investigate and take any appropriate action with respect to a fiduciary charged with oversight of VA pension benefits, and plaintiffs give no indication that they complied with the procedures required by 38 U.S.C. § 5502(b) and 38 C.F.R. § 13.100(c), they failed to exhaust their administrative remedies.

Although this issue was not raised in the trial court, we raise it sua sponte here, because, as a result of plaintiffs' failure to exhaust the administrative remedies available to them under federal statutes, we lack jurisdiction over plaintiffs' claim that the Superintendent breached his fiduciary duty with regard to their VA benefits. *See Hoffman v. Colo. State Bd. of Assessment Appeals,* 683 P.2d 783, 785 (Colo.1984) (court lacks jurisdiction to grant relief if plaintiff has not exhausted administrative remedies); *Prairie Band of Potawatomi Indians v. Pierce,* 253 F.3d 1234, 1240 (10th Cir.2001) (so long as a case is pending, the issue of jurisdiction may be raised at any stage of the proceedings either by the parties or by the court on its own motion); *Davis ex rel. Davis v. U.S.,* 343 F.3d 1282, 1295–96 (10th Cir. 2003) (sua sponte dismissal for failure to exhaust administrative remedies affirmed). Moreover, based upon the statutory scheme related to VA benefits and veterans affairs, it appears that, after exhaustion of administrative remedies, plaintiffs' claim must ultimately be raised in federal court. *See* 38 U.S.C. §§ 5501–5510, 7101–7112; *see also* 38 U.S.C. § 7251 (creating the United States Court of Appeals for Veterans Claims). We therefore vacate that portion of the judgment ruling on plaintiffs' claim that the Superintendent breached fiduciary duties owed to plaintiffs with regard to VA benefits.

Judgment vacated as to breach of fiduciary duty claim regarding plaintiffs' VA benefits and affirmed in all other respects.

Judge DAILEY and Judge CARPARELLI concur.