IN THE MATTER OF THE APPEAL FROM THE DENIAL OF THE APPLICATION TO DREDGE AND/OR FILL OF THE BROAD AND GALES CREEK COMMUNITY ASSOCIATION

No. 793SC302

(Filed 15 January 1980)

Waters and Watercourses § 7 — denial of dredge or fill permit — effect on riparian owner

The Marine Fisheries Commission acted arbitrarily and capriciously in denying a permit to dredge or fill in estuarine waters for the purpose of constructing a public boat ramp on the ground that the project would have a significant adverse effect on a riparian owner, G.S. 113-229(e)(2), where all of the evidence related to adverse effects such as noise, parking, trespass, and loss of privacy, but there was no evidence that the use of the proposed ramp and its approaches by the public or the operation of boats on the waters would have any adverse effect on the environment of estuarine resources of the riparian owner's land.

Judge MARTIN (Robert M.) dissenting.

APPEAL by the applicant from *Rouse, Judge.* Judgment entered 6 November 1978 in Superior Court, CARTERET County. Heard in the Court of Appeals on 15 November 1979.

This case arises from the refusal of the North Carolina Marine Fisheries Commission to grant a permit to dredge and/or fill on Broad Creek in Carteret County. Applicant Broad and Gales Creek Community Association sought the permit for the purpose of constructing a public boat launching ramp. By letter dated 11 May 1976, L. Leo Tilley, assistant director of the Division of Marine Fisheries, informed the applicant that its request for the permit was being denied because of "strong objections from adjacent riparian landowners." Although eleven State agencies had lodged no objections to the proposal after extensive review of the plan and on-site inspections, the Division nevertheless concluded that the project would detrimentally affect the value and enjoyment of the property of the two landowners, Fred J. Cone and Rugumak, Ltd.

Pursuant to timely request by the applicant, the matter was heard before the full Commission on 18 August 1976. Thirty-four witnesses, who live in the area where the ramp was to be located, appeared in support of the project. The testimony of the property owners called by applicant was substantially to the effect that the ramp would enhance rather than adversely affect the value and enjoyment of their property, and that it would serve a much-needed public purpose since there was no other public launching ramp in the area. William R. Lewis, Chairman of the Board of Directors of the Broad and Gales Creek Community Association, testified that the Association, representing 1500 to 1700 members, had undertaken "numerous projects in the community for the public good", and that it wished "to add this project to our list of facilities to provide for the community."

Respondents offered the testimony of four witnesses, each of whom own one-fourth undivided interests in the Rugumak property adjacent to the site of the proposed ramp. They testified that the value and enjoyment of their property would be adversely affected by the construction of the ramp in the following ways: Edward Ruggles expressed concern about people parking on his property and littering the area; Mrs. George Gullette stated that she, too, was worried about litter and feared early morning noise

which would prevent her from sleeping late; Mrs. Edward Schoenborn said that she was "afraid of some of the characters . . . that would come in and use it [a public ramp]," and that all the dogs in the neighborhood "would bark like mad" when strangers came in; Mrs. Ralph Fadum testified that she was concerned about losing her privacy, that "[i]t will ruin what used to be private sunbathing and swimming", and that the noise would be detrimental to her enjoyment of her property. These witnesses also testified that they were concerned about drainage and erosion problems on the dirt access road to the ramp, although they conceded that the Association had maintained the road in the past. None of the four owners occupy the property on a full-time basis, but they and their families vacation there frequently. Fred Cone, the other landowner who initially objected to the project, did not appear to testify. Mrs. Fadum testified that he had told her he was "very opposed" to the project. She admitted that he did not live on his property and that she did not know when he had last vacationed there.

At the close of the evidence, the Commission made findings of fact and conclusions of law, and entered its Order dated 30 March 1977, denying the application for a dredge and fill permit on the ground that "the proposed project would . . . have a significant adverse effect on the value and enjoyment of the adjacent riparian owner, Rugamak [sic] Ltd."

Upon the applicant's petition for review in Superior Court, the matter was heard before Judge Rouse who affirmed the decision of the Commission upon findings that its decision was authorized by the statute, N.C. Gen. Stat. § 113-229(e)(2), that the statute was constitutional, and that the decision was supported by substantial evidence. Applicant thereupon appealed to this Court.

*Bennett, McConkey & Thompson, by Thomas S. Bennett, for the applicant appellant.*

*Attorney General Edmisten, by Special Deputy Attorney General W. A. Raney, Jr., and Assistant Attorney General Amos C. Dawson III, for the Marine Fisheries Commission.*

*Wheatly, Wheatly & Davis, by Warren J. Davis, for Rugumak, Ltd.*

HEDRICK, Judge.

Chapter 113 of the North Carolina General Statutes is entitled "Conservation and Development." The provision in question on this appeal, § 113-229, provides in pertinent part as follows:

> *Permits to dredge or fill in or about estuarine waters or state-owned lakes.* — (a) Except as hereinafter provided before any excavation or filling project is begun in any estuarine waters, tidelands, marshlands, or state-owned lakes, the party or parties desiring to do such shall first obtain a permit from the Department of Natural Resources and Community Development.
>
> . . .
>
> (e) . . . The Department may deny an application for a dredge or fill permit upon finding: (1) that there will be significant adverse effect of the proposed dredging and filling on the use of the water by the public; or (2) that there will be significant adverse effect on the value and enjoyment of the property of any riparian owners; or (3) that there will be significant adverse effect on public health, safety, and welfare; or (4) that there will be significant adverse effect on the conservation of public and private water supplies; or (5) that there will be significant adverse effect on wildlife or fresh water, estuarine or marine fisheries. In the absence of such findings, a permit shall be granted.

This statute, as its title indicates, is in the nature of a conservation measure. Its purpose is obvious: the protection and preservation of the State's natural resources, in particular, its estuarine resources. Courts have universally agreed that such measures are constitutional as legitimate exercises by the State of its inherent police power to promote the public interest in conservation. *See* Annot., 46 A.L.R. 3d 1431 (1972). Nevertheless, any statute enacted in the exercise of the police power must be strictly construed so as to result in the least interference with personal liberty. 3 Strong's N. C. Index 3d, *Constitutional Law* §§ 11, 11.1 (1976). Moreover, the means chosen to achieve the legislative ends must be reasonable and, in the context of the police power, the reasonableness standard necessarily entails a balancing of the private interest to be affected and the public good to be achieved.

---

---

*See A-S-P Associates v. City of Raleigh,* 298 N.C. 207, 258 S.E. 2d 444 (1979); 16A Am. Jur. 2d *Constitutional Law* § 385 (1979).

In the case before us appellant argues, *inter alia,* that the Superior Court erred in affirming the decision of the Commission denying the permit for the reason that the Order was not supported by substantial evidence and that it was arbitrary and capricious. As we pointed out above, the obvious purpose of statutes regulating the issuance of dredge and fill permits is to protect the environment. Specifically, the obvious purpose of the statute under consideration is to protect the environment of estuarine waters and resources from the detrimental effects of dredging and filling in such waters.

The Commission bottomed its decision on the finding and conclusion that the dredging required for the construction of a boat launching ramp would have a "significant adverse effect on the value and enjoyment of the adjacent riparian owner, Rugamak [sic] Ltd." N. C. Gen. Stat. § 113-229(e)(2). It is significant that the record before us is wholly devoid of any evidence concerning any effect that the proposed "dredging or filling" pursuant to the permit might have on the estuarine resources contiguous to any riparian owners, including Rugumak. Furthermore, we think it logical to assume that the dredging would *not* adversely affect the estuarine resources since the plans for the proposal were circulated among and studied by the requisite eleven State agencies, none of whom raised objections thereto.

All of the evidence developed in this case relates exclusively to the effect that the use of the ramp and its approaches by the public would have on the idiosyncratic sensitivities of four individuals, in that the influx of people with boats, and the possible littering and noise, would adversely affect their enjoyment of their property. There is no evidence about the effect of the dredging itself. There is not one scintilla of evidence that the use of the ramp and its approaches, or the operation of boats on the waters, would have any adverse effect on the environment of the estuarine resources. Without belittling the concerns of the owners of the Rugumak property or their desires for privacy and quiet, we cannot accept a construction of this statute that allows the State to favor private interests over public interests.

The State in the exercise of its police power acts legitimately only when it acts to protect the *public* good and the *general* welfare. It matters not that private interests are thereby benefited. The State properly considers only the benefit to the members of the public as a group, and it may not exercise the police power to favor or benefit some private interest. *See A-S-P Associates v. City of Raleigh, supra;* 16A Am. Jur. 2d *Constitutional Law* §§ 360 *et seq.* (1979).

Yet, that is what the Commission did in this case. Despite the overwhelming evidence that construction of a boat launching ramp in the proposed area would be beneficial to the public, the Commission allowed private concerns to prevail. We agree with appellant that such action was arbitrary and capricious. The Commission cannot use the police power to further private interests in this way.

For the reasons stated, the judgment of the Superior Court is reversed. The cause is remanded to the Superior Court for the entry of an Order remanding the proceeding and directing the issuance of the permit, as required by the statute.

Reversed and remanded.

Judge WELLS concurs.

Judge MARTIN (Robert M.) dissents.

Judge MARTIN (Robert M.) dissenting.

The majority contends that the sole purpose of N.C. Gen. Stat. § 113-229 is "the protection and preservation of the State's natural resources, in particular, its estuarine resources." This approach, however, overlooks the fact that the Legislature has granted the Department of Natural Resources and Community Development the authority to deny an application for a dredge or fill permit upon finding: " . . . (2) that there will be significant adverse effect on the value and enjoyment of the property of any riparian owners . . ." That the Legislature has empowered the Department to consider the effects of a project on a private property owner is further reinforced by § 113-229(d) which requires that " . . . the applicant shall cause to be served . . . upon an

owner of each tract of riparian property adjoining that of the applicant a copy of the application filed with the State of North Carolina and each such adjacent riparian owner shall have 30 days from the date of such service to file with the Department of Natural Resources and Community Development written objections to the granting of the permit to dredge or fill." Thus the statutory pattern insures that *adjacent* riparian owners be given notice of a project and an opportunity to object and that significant adverse effect of a project on the value and enjoyment of *any* riparian owner's property will be grounds for the denial of such a permit. Thus the Commission was acting within the statute when it considered the adverse effects of the project on four adjacent land owners.

While protection of ecological interests may be the primary aim of the statute, protection of private interests is well provided for. The statute does not require that the riparian owner's value and enjoyment of the property be confined to its estuarine value and enjoyment or that his objections to a project be ecological in nature. Therefore, the Department is legitimately concerned with such objections and adverse effects as noise, parking, trespass and property values.

At the hearing before the Marine Fisheries Commission there was testimony by the adjacent owners which would support a finding that "the proposed project would . . . have a significant adverse effect on the value and enjoyment of the adjacent riparian owner, Ragamak [sic] Ltd." According to § 113-229(g)(5), "The burden of proof at any hearing shall be upon the person or agency . . . at whose instance the hearing is being held." In this case, although applicant adduced testimony on the beneficial effects of the project as a whole, it did not meet its burden of proving that there will not be significant adverse effects on the value and enjoyment of the property of any riparian owners. *In re Appeal of Seashell Co.,* 25 N.C. App. 470, 213 S.E. 2d 374 (1975).

I vote to affirm the judgment of the trial court.