IN THE MATTER OF THE APPEAL FROM THE DENIAL OF THE APPLICATION TO
DREDGE AND/OR FILL OF THE BROAD AND GALES CREEK COMMUNITY ASSOCIATION

No. 101

(Filed 3 June 1980)

**1. Appeal and Error § 14— judgment rendered out of session—no notice of appeal filed with clerk—minimal acceptable steps to perfect appeal**

While notice of appeal of a judgment rendered out of session was required by Appellate Rule 3(b) to be filed with the clerk and served on the other parties, steps taken by appellant in an attempt to perfect its appeal were minimally acceptable in this case because the respondents were in fact put on actual notice of applicant's intent to appeal from any adverse decision where applicant stated in open court that it would appeal if it lost, and the applicant in open court requested that the proposed judgment to be submitted by respondents contain appeal entries so that applicant's notice of appeal would be perfected if the court should sign the proposed judgment.

**2. Waters and Watercourses § 7— denial of dredge or fill permit—adverse effect on riparian owners—no unlawful delegation of legislative power**

There are adequate statutory guidelines and procedural safeguards relating to the authority of the Department of Natural Resources and Community Development and the review commission to deny an application for a permit to dredge or fill in estuarine waters pursuant to G.S. 113-229(e)(2) upon finding "that there will be significant adverse effect on the value and enjoyment of the property of riparian owners" so that G.S. 113-229(e)(2) does not constitute an unlawful delegation of legislative power in violation of Art. I, § 6 of the N. C. Constitution.

**3. Waters and Watercourses § 7— denial of dredge or fill permit—adverse effect on riparian owners—constitutional exercise of police power**

The statute giving the Department of Natural Resources and Community Development the authority to deny an application for a dredge or fill permit in estuarine waters upon finding "that there will be significant adverse effect on the value and enjoyment of the property of any riparian owners," G.S. 113-229(e)(2), does not allow the State to favor private interests over public interests and is a constitutional exercise of the police power since the denial of a permit where either the water or adjacent private property will be adversely affected is a matter of public interest and is therefore a proper subject for regulatory legislation, the permit application system created by G.S. 113-229 is the most feasible and reasonable manner to control dredging and filling activities, and the restriction placed on a landowner is reasonable because it relates only to what the owner may do in the State's estuarine waters and does not interfere with the owner's right to use his own property.

**4. Waters and Watercourses § 7— application for dredge or fill permit—effect on riparian owners—consideration of boat ramp which is purpose of dredge and fill work**

In determining whether to deny an application for a dredge and fill permit in estuarine waters on the ground that there would be a significant adverse effect on the value and enjoyment of the property of riparian owners, the review commission was not limited to a consideration only of the effects of the dredging and filling itself on adjacent landowners but could properly consider the effects of a boat ramp which was the ultimate purpose of the dredge and fill work. Furthermore, even if the review commission exceeded its statutory authority in considering the effects of the boat ramp, the commission's denial of a dredge and fill permit would still be upheld where the application stated that the fill from the dredging operation would be placed on the roadbed leading to the boat ramp site; the riparian owners presented evidence that the roadbed has already suffered erosion, that erosion will continue unless adequate drainage measures which the applicant did not propose are taken, and that the erosion will affect the access area and the property of the riparian owners, since the adjacent owners' property will be adversely affected by the dredging and filling itself because of the further erosion that will occur.

**5. Waters and Watercourses § 7— denial of dredge and fill permit—boat ramp's adverse effect on riparian owners—sufficiency of evidence in record as a whole**

There was substantial evidence in the record as a whole to support the decision of the review commission upholding the denial of a dredge and fill permit by the Department of Natural Resources and Community Development on the ground that a boat ramp which is the ultimate purpose of the dredge and fill work will significantly adversely affect the value and enjoyment of riparian property.

Justice EXUM dissenting in part.

ON appeal by an adjacent riparian landowner and the Marine Fisheries Commission from the decision of the Court of Appeals, 44 N.C. App. 554, 261 S.E. 2d 510 (1980) (opinion by *Hedrick, J.* with *Wells, J.* concurring and *Martin [Robert M.], J.* dissenting), which reversed the judgment entered by *Rouse, J.* on 6 November 1978 in CARTERET County Superior Court upholding the decision of the Marine Fisheries Commission denying the applicant a permit to dredge and fill on Broad Creek.

Applicant Broad and Gales Creek Community Association sought from the Department of Natural Resources and Community Development a permit to dredge and fill on Broad Creek for the purpose of constructing a boat launching ramp. Pursuant to G.S. 113-229(d), a copy of the application was served on the owner of each tract of riparian property adjoining the property concerned in the application. The two adjacent owners, Mrs. Nancy

Fadum, a part-owner of Rugumak, Ltd., and Fred Cone, filed written objections to the granting of the permit. In accordance with G.S. 113-229(e) the application was circulated among eleven state agencies so that they had an opportunity to raise any objections to the project that they might have. After reviewing the project and conducting inspections, there were no objections from any of the state agencies.

By letter dated 11 May 1976, Mr. Leo Tilley, Assistant Director of the Division of Marine Fisheries within the Department of Natural Resources and Community Development, informed the applicant that its request for the permit was denied. The denial was based on G.S. 113-229(e)(2) which provides that, "[t]he Department may deny an application for a dredge or fill permit upon finding: . . . (2) that there will be significant adverse effect on the value and enjoyment of the property of any riparian owners."

Pursuant to G.S. 113-229(f), applicant requested and received a hearing before the Marine Fisheries Commission.[1] The Commission conducted a hearing, heard the evidence and entered its findings of facts and conclusions of law. The Commission concluded that the denial of the permit was proper because the applicant, who had the burden of proof at the hearing, G.S. 113-229(g)(5), "failed to show by the greater weight of the evidence that the permit denial by the department was not in accordance with the law and the facts."

G.S. 113-229(f) provides that an "appeal from the ruling of the review commission [is to go] to the superior court of the county where the land or any part thereof is located, [and that the judicial review is governed by] . . . the provisions of Chapter 150A of the General Statutes [the Administrative Procedure Act]." Pursuant to that statute, the applicant appealed to the Superior Court of Carteret County and Rouse, J. affirmed the Commission's decision. From the reversal by the Court of Appeals, the adjacent riparian landowner, Rugumak, Ltd., and the Marine Fisheries Commission have appealed as a matter of right to this Court pursuant to G.S. 7A-30(2).

---

1. Effective 2 April 1979 the Coastal Resources Commission now conducts these hearings. G.S. 113-229(f) (Supp. 1979).

Other facts necessary to the decision of this case will be related in the opinion.

*Wheatly, Wheatly, Davis & Nobles by Warren J. Davis for appellant Rugumak, Ltd.*

*Attorney General Rufus L. Edmisten by Special Deputy Attorney General W. A. Raney, Jr. for appellant Marine Fisheries Commission.*

*Bennett, McConkey & Thompson, P.A. by Thomas S. Bennett for appellee.*

COPELAND, Justice.

[1] Six questions are presented for our consideration. The first issue is whether the Court of Appeals erred in failing to dismiss the applicant's appeal to that court due to a failure to properly serve notice of appeal on the opposing party. The Court of Appeals did not address this issue. Nevertheless, "[a] party who was an appellee in the Court of Appeals and is an appellant in the Supreme Court [Rugumak, Ltd.] may present in his brief . . . any questions which, pursuant to Rule 28(c), he properly presented for reivew to the Court of Appeals." Rule 16(a), Rules of Appellate Procedure. Rule 28(c) deals with the presentation of additional questions by an appellee and Rugumak, Ltd., as appellee in the Court of Appeals, properly presented this issue to that Court by noting an exception, making a cross-assignment of error, and arguing the question in its brief in the Court of Appeals. Therefore, as provided in Rule 16(a), the question is properly before us for review.

Rule 3(a), Rules of Appellate Procedure, allows the notice of appeal to be given in open court when the "*judgment or order . . . [is] rendered* in a civil action or special proceeding *during a session of court.*" [Emphasis added.] The judgment in this case was rendered out of session and Rule 3(b) plainly provides that "[a]ny party entitled by law to appeal from a judgment or order . . . rendered in a civil action or special proceeding out of session may take appeal by filing notice of appeal with the clerk of superior court and serving copies thereof upon all other parties within the time prescribed by subdivision (c) of this rule."

The trial judge conducted a hearing on the motion to dismiss the appeal. In his order filed 22 February 1979 he concluded that the applicant properly perfected his appeal by giving notice of appeal in open court. In essence, he found that the applicant had complied with Rule 3(a) of the Rules of Appellate Procedure. The applicant had stated in open court that if he lost he would appeal. In addition, the trial judge noted in his order that the applicant had "in open court requested that the proposed judgment to be submitted by the respondents contain appeal entries to be made a part of the judgment proposed by the respondents so that in the event the court should sign the respondent's proposed judgment the applicant's notice of appeal would be perfected. . . . The proposed judgment tendered by the respondents did not contain appeal entries as requested by applicant in open court."

Thus, Rugumak was put on notice that the applicant would appeal in the event it lost in the trial court. While it is true that since the judgment was rendered out of session it is Rule 3(b) and not Rule 3(a) that is applicable, under the peculiar facts of this particular case we hold that the above noted steps taken by the applicant in an attempt to perfect an appeal are minimally acceptable because Rugumak was in fact put on actual notice of applicant's intention to appeal from any adverse decision. Such a procedure for giving notice of appeal should not, however, be repeated because the steps for taking an appeal are clearly set forth in Rule 3 and should be followed as written. This assignment of error is overruled.

Before discussing the remaining issues we must note that the parties to this appeal have not adhered to the literal requirements of Rule 16(a) of the Rules of Appellate Procedure. Rugumak was the appellee in the Court of Appeals and is the appellant here. The rule is: "A party who was an appellee in the Court of Appeals and is an appellant in the Supreme Court may present in his brief any questions going to the basis of the Court of Appeals' decision by which he is aggrieved, and any questions which, pursuant to Rule 28(c), he properly presented for review to the Court of Appeals." Rule 16(a).

The issue that Rugumak presented to the Court of Appeals for review pursuant to Rule 28(c) (upon a cross-assignment of error) was the denial of its motion to dismiss applicant's appeal. As

noted above, this issue was properly brought forward to this Court since it was presented to the Court of Appeals. The other issues which Rugumak should properly present here are those which go "to the basis of the Court of Appeals' decision by which he is aggrieved." The Court of Appeals decided that G.S. 113-229(e)(2) was an unconstitutional exercise of the police power and thus the action of the Marine Fisheries Commission (Commission) in basing its decision on this statute was arbitrary and capricious. Rugumak brought this issue to this Court as well as all of the other issues that the *applicant* had presented to the Court of Appeals even though that Court did not discuss or decide those other issues since it decided in the applicant's favor on the police power issue.

Nevertheless, we shall address all of the issues presented here by Rugumak as appellant because Rule 16(a) also provides: "A party who was an appellant in the Court of Appeals, and is either an appellant or an appellee in the Supreme Court, may present in his brief any question which he properly presented for review to the Court of Appeals, and is not limited to those actually determined by the Court of Appeals. . . ." Rule 16(a). The applicant was the appellant in the Court of Appeals and is the appellee here. Thus, it is clear that if Rugumak had properly limited itself to the issues decided against its position in the Court of Appeals, the applicant, after responding in its brief to this Court to those issues, could then have presented as additional questions for review, *all* of the issues that *it* had presented to the Court of Appeals without limitation to those actually determined by that Court. Such steps would have then necessitated a reply brief from Rugumak to respond to those additional questions presented in the applicant's brief to this Court.

These additional steps were unnecessary on this appeal. The applicant has vigorously argued *all* of the issues and clearly wishes this Court to address all of the issues within our potential scope of review. *See,* Drafting Committee Note to Rule 16. Therefore, even though Rule 16 has not literally been followed, the parties have put before us all of the issues that were before the Court of Appeals. Rugumak seeks a reversal on the point upon which it lost in the Court of Appeals and the applicant would like us to address the additional grounds that he presented

to the Court of Appeals (success upon any one of which will lead to a decision in its favor).

[2]   The second issue is whether G.S. 113-229 is an unconstitutional delegation of legislative power in violation of Art. I, sec. 6 of the North Carolina Constitution or is an unconstitutional exercise of the police power.

Our recent decision in *Adams v. N.C. Department of Natural and Economic Resources*, 295 N.C. 683, 249 S.E. 2d 402 (1978), fully sets forth the current status of and analysis of cases under the non-delegation doctrine in this jurisdiction. The full exposition of the doctrine in *Adams* by Justice Huskins cannot be improved upon and it would serve no useful purpose to simply repeat it here. It remains for us to apply the doctrine to the statute at issue in this case.

The test is whether the delegation is accompanied by adequate guiding standards. If so, the delegation will be upheld. The need to delegate a limited portion of legislative powers in order to effectively utilize administrative expertise must be reconciled with the constitutional mandate that the legislature retain in its own hands the supreme legislative power. *Jernigan v. State*, 279 N.C. 556, 184 S.E. 2d 259 (1971). We must insure that the decision-making by the administrative agency is not arbitrary and unreasoned and that the agency is not asked to make important policy choices that might just as easily be made by the legislature. *Adams v. N.C. Department of Natural and Economic Resources, supra.* The goals and policies set forth by the legislature for the agency to apply in exercising its powers need be only as specific as the circumstances permit. *Id.; N.C. Turnpike Authority v. Pine Island, Inc.*, 265 N.C. 109, 143 S.E. 2d 319 (1965).

The applicable standard by which to judge applications for permits to dredge and fill that is at issue in this case provides:

"The Department may deny an application for a dredge or fill permit upon finding: . . . (2) that there will be significant adverse effect on the value and enjoyment of the property of any riparian owners. . . ." G.S. 113-229(e)(2).

If the matter goes to the Commission for review, it shall conduct a hearing.

"At said hearing, evidence shall be taken by the review commission from all interested persons. . . . After hearing the evidence, the review commission shall make findings of fact in writing and shall affirm, modify or overrule the action of the Department concerning the permit application." G.S. 113-229(f).

"The burden of proof at any hearing shall be upon the person or agency, as the case may be, at whose instance the hearing is being held." G.S. 113-229(g)(5).

"No decision or order of the review commission shall be made in any proceeding unless the same is supported by competent, material and substantial evidence upon consideration of the whole record." G.S. 113-229(g)(6).

The above quoted statutes give clear and sufficiently detailed guidance to the Department of Natural Resources and Community Development (Department) and the review commission with respect to granting or denying applications for permits to dredge and fill. "It is enough if general policies and standards have been articulated which are sufficient to provide direction to an administrative body possessing the expertise to adapt the legislative goals to varying circumstances." *Adams v. N.C. Department of Natural and Economic Resources, supra* at 698, 249 S.E. 2d at 411. In fact, it is precisely this need to deal with individual factual circumstances, as in the case of·applications for permits to dredge and fill in the state's estuarine resources, which makes the task impossible for the legislature to manage alone. The legislature has properly set forth adequate standards here to allow the agency, with its accumulation of expertise in this subject area, to apply the standards to the varying factual circumstances.

In its conclusions of law, the Commission defined three of the terms appearing in G.S. 113-229(e)(2), the statute upon which the permit application was denied. Those definitions adopted by the Commission provide:

"1. 'Value' as it appears in G.S. 113-229(e) means fair market value.

2. 'Enjoyment' as it appears in G.S. 113-229(e) means possession and beneficial use for the purposes to which it is reasonably susceptible by a person of ordinary sensibilities.

3. As to what constitutes a 'significant adverse effect on value and enjoyment' as the phrase is used in G.S. 113-229(e), an objective standard is applied."

Final interpretation of statutory terms is, of course, a judicial function, but definitions and interpretations of the statute by the agency with the expertise in administering it are entitled to due consideration by the courts. *F.T.C. v. Texaco, Inc.,* 393 U.S. 223, 21 L.Ed. 2d 394, 89 S.Ct. 429 (1968). We find the above definitions to be entirely proper and in accordance with the intent and goals of the legislature.

Also, we see nothing wrong in placing the burden of proof at the hearing before the review commission on the party who lost before the Department. G.S. 113-229(g)(5). It is simply a recognition that it is presumed that the Department will act in accordance with the law and the facts and the losing party should have the burden of showing that the Department erred. *In re Annexation Ordinance,* 284 N.C. 442, 202 S.E. 2d 143 (1974).

Another relevant circumstance in determining whether a particular delegation of authority is supported by adequate guiding standards is to consider whether the authority vested in the agency is subject to procedural safeguards. This aids in insuring that the agency's decision-making is not arbitrary and unreasoned. *Adams v. N.C. Department of Natural and Economic Resources, supra.* There are four sources of procedural safeguards: (1) those provided by the Act, (2) those contained in the North Carolina Administrative Procedure Act (APA), (3) the Administrative Rules Review Committee created by G.S. 120-30.26 and (4) the "Sunset" legislation contained in G.S. 143-34.10 *et seq.*

G.S. 113-229(f) provides for appeal of the Department's decision to the review commission. G.S. 113-229(g) contains a list of procedural safeguards provided by the review commission. The hearings are open to the public. A record of the proceedings is kept. The procedures applicable to civil actions in superior court are to be generally followed by the Commission. The Commission has a subpoena power. The burden of proof is on the party

appealing from the Department's decision. The Commission's decision must be supported by competent, material and substantial evidence upon consideration of the whole record. The parties are given an opportunity to submit proposed findings of fact and conclusions of law and any brief in connection therewith. The record of the proceedings must show the Commission's ruling with respect to each requested finding and conclusion. The parties receive notice of all findings, decisions, meetings and hearing dates. G.S. 113-229(g)(1) - (9).

Review in the superior court is pursuant to the APA. G.S. 113-229(f). The regulations adopted by the Commission, 15 N.C.A.C. Subchapter 3D, are subject to review by the Administrative Rules Review Committee. G.S. 120-30.26; *Adams v. N.C. Department of Natural and Economic Resources, supra.* The Department's activities under G.S. 113-229 are also subject to legislative review under the "Sunset" legislation. G.S. 143-34.10 *et seq.* Article 17 of Chapter 113 will stand repealed effective 1 July 1983 unless revived by legislative action. G.S. 143-34.13. Thus, there are adequate guiding standards and procedural safeguards to fully justify this delegation of authority to the Department to grant or deny permits to dredge and fill and to the Commission to review the Department's decision.

[3]   The Court of Appeals held that the grant of authority contained in G.S. 113-229(e)(2) to deny permits when the value and enjoyment by adjacent riparian landowners of their property would be significantly adversely affected is an unconstitutional exercise of the police power to the extent it allows the State to favor private interests over public interests. The Court of Appeals noted that: "The State in the exercise of its police power acts legitimately only when it acts to protect the *public* good and the *general* welfare." *In re Application to Dredge,* 44 N.C. App. 554, 559, 261 S.E. 2d 510, 513 (1980) (Emphasis in original). Since the purpose of the act is to conserve our estuarine resources, G.S. 113-131 and 132, the denial of permits under G.S. 113-229(e)(2) is proper only when there is evidence that the adjacent riparian landowners have been adversely affected in their enjoyment *of those resources* and not when the adverse effect relates solely to the enjoyment and value of *their own property.* For the reasons which follow, we reverse.

In *A-S-P Associates v. City of Raleigh*, 298 N.C. 207, 213-14, 258 S.E. 2d 444, 448-49 (1979), we held that:

> "The police power is inherent in the sovereignty of the State. . . . It is as extensive as may be required for the protection of the public health, safety, morals and general welfare. . . . [When there is a challenge to certain legislation on the grounds that the police power has been exercised in violation of constitutional provisions, the legislation is subjected to a two-pronged analysis.] First, is the object of the legislation within the scope of the police power? [In other words, does the legislation promote the public health, safety, morals, or general welfare?] Second, considering all the surrounding circumstances and particular facts of the case if the means by which the governmental entity has chosen to regulate reasonable? . . . This second inquiry is two-pronged: (1) Is the statute in its application reasonably necessary to promote the accomplishment of a public good and (2) is the interference with the owner's right to use his property as he deems appropriate reasonable in degree?" [Citations omitted.]

When the most that can be said against a statute is that whether it is an unreasonable, arbitrary or unequal exercise of the police power is fairly debatable, the court will not interfere and will not substitute its judgment for that of the legislature since that body is charged with the primary duty of determining what is in the interest of the public health, safety, morals and general welfare. *Id.*

G.S. 113-229 does promote the public health, safety and general welfare. The statute requires that landowners adjacent to estuarine waters obtain permits before dredging and filling in those waters. The statute concerns what landowners may do as far as dredging and filling in those waters, which belong to the people of this State, G.S. 113-131, and not what they may or may not do on their own land. To the extent that the permits may be denied due to significant adverse effect on (a) the use of the water by the public, (b) the wildlife or fresh water, estuarine or marine fisheries, (c) the conservation of water supplies, or (d) the public health, safety and welfare, *see*, G.S. 113-229(e)(1), (3), (4) and (5), the object of the legislation is obviously within the police power. In these instances, the legislature has properly concerned itself with the conservation of our estuarine resources which belong to

the public and with the public's use and enjoyment of those resources. *See, Graham v. Reserve Life Insurance Co.*, 274 N.C. 115, 161 S.E. 2d 485 (1968). (It is within the police power of the State to own and operate a sanatorium for the treatment of turberculosis.)

The issue is whether G.S. 113-229(e)(2) is within the police power. If subsection (e)(2) were to be construed as the Court of Appeals held, then the adjacent landowners' use of the *water* rather than the use of their own *land* would have to be significantly adversely affected before a permit could be denied. Effect on the use of the water is already fully covered by subsection (e)(1). By having a subsection (e)(2), the legislature obviously intended to be adding another basis for the denial of a permit. The issue is whether it is within the police power to allow a permit to be denied when an adjacent landowner's use *of his own land* would be significantly adversely affected.

It is still to be noted that the restriction of (e)(2) is not a restriction regarding what a landowner may do with his own land but is concerned with what a landowner adjacent to our estuarine resources may do as far as dredging and filling in those waters when an adjacent landowner will be adversely affected in the enjoyment and value of his land. Nevertheless, the basic issue is the same: Is it of concern to the public when the actions of one landowner affect the value and enjoyment of another landowner's property? More specifically, does it promote the public health, safety, morals, or general welfare to place restrictions on what one landowner may do when his actions will adversely affect the value and enjoyment of the property of others?

We answered this issue in the context of a zoning case as follows:

"The whole concept of zoning implies a restriction upon the owner's right to use a specific tract for a use profitable to him but detrimental to the value of other properties in the area, thus promoting the most appropriate use of land throughout the municipality, considered as a whole. The police power, upon which zoning ordinances must rest, permits such restriction upon the right of the owner of a specific tract, when the legislative body has reasonable basis to believe that *it will promote the general welfare by conserv-*

*ing the values of other properties and encouraging the most appropriate use thereof." Blades v. City of Raleigh,* 280 N.C. 531, 546, 187 S.E. 2d 35, 43 (1972). [Emphasis added.]

If the legislature may exercise the police power to restrict the rights of an owner on his own land, then *a fortiorari*, it may be exercised to restrict an applicant's right to dredge and fill in estuarine waters which belong to the public when the waters or adjacent private property will be adversely affected. Thus, G.S. 113-229(e)(2) does not place private interests over public interests as the Court of Appeals held. The public interest is promoted by the standard set forth in subsection (e)(2).[2]

With respect to the second prong of the test regarding the police power, the means chosen to achieve the legislative objective, the permit application system created by G.S. 113-229, is the most feasible and reasonable manner to control dredging and filling activities. Also, the restriction placed on the landowners is reasonable because the owner's right to use his own property has not been interfered with. The restriction relates *only* to dredging and filling activities and is a restriction on what the owner may do in the State's estuarine resources that are adjacent to his property. G.S. 113-229 is proper in all respects under the State's police power. These assignments of error are overruled.

**[4]** The next issue is whether G.S. 113-229 allows the Commission to consider only the effects of the dredging and filling itself

---

2. The Court of Appeals found that G.S. 113-229(e)(2) promotes only the private interests of adjacent landowners. The public interest referred to by the Court of Appeals is the public's desire for a public boat launching ramp on Broad Creek. Although the Broad and Gales Creek Community Association is a non-profit corporation with 1500-1700 members and counsel for the Association stated at oral argument that the Association might have been able to restrict use of the ramp to members of the Association, the ramp was to be constructed at the end of a street allegedly dedicated to public use. Therefore, we assume for purposes of this decision that the ramp would have been a public ramp that would have been maintained by the Association since the Department and the review commission are without jurisdiction to try title claims with respect to the access property and no issue regarding title to this property was taken to the court for resolution.

Often, however, the public may not be the beneficiary of the dredging and filling activity. It may solely benefit the private landowner who wishes to conduct the activity in the water adjacent to his property. No matter who the project may *benefit*, the *denial* of the permit in any instance where the water *or adjacent private property* will be adversely affected is, *in both instances*, a matter of public interest and therefore is a proper subject for regulatory legislation.

on adjacent landowners so that by considering the effects that the boat ramp would have on such landowners the agency exceeded its statutory authority.[3]

It is proper to presume that an administrative agency has properly performed its official duties. *In re Annexation Ordinance, supra; see, J. B. Montgomery, Inc. v. United States,* 206 F. Supp. 455 (D. Colo. 1962), *aff'd,* 376 U.S. 389, 11 L.Ed. 2d 797, 84 S.Ct. 884, *rehearing denied,* 377 U.S. 925 (1964). Of course, the responsibility for determining the limits of statutory grants of authority to an administrative agency is a judicial function for the courts to perform. *Garvey v. Freeman,* 397 F. 2d 600 (10th Cir. 1968).

The agency is a creature of the statute creating it and has only those powers expressly granted to it or those powers included by necessary implication from the legislative grant of authority. *Soriano v. United States,* 494 F. 2d 681 (9th Cir. 1974). The agency has those powers that are explicitly granted in the statute plus those powers that are ascertainable as inherent in the underlying policies of the statute, *United Steelworkers of America, AFL-CIO v. N.L.R.B.,* 390 F. 2d 846 (D.C. Cir. 1967), *cert. denied sub nom.,* 391 U.S. 904 (1968), and that may be fairly implied from the statute. *Pan American World Airways, Inc. v. United States,* 371 U.S. 296, 9 L.Ed. 2d 325, 83 S.Ct. 476 (1963); *Morrow v. Clayton,* 326 F. 2d 36 (10th Cir. 1963). The agency's powers include those that the legislative body intended the agency to exercise. *See, Midwest Video Corp. v. F.C.C.,* 571 F. 2d 1025 (8th Cir. 1978), *aff'd,* 440 U.S. 689, 59 L.Ed. 2d 692, 99 S.Ct. 1435 (1979). Regulatory legislation should be given a practical construction so that the agency may perform the duties required of it by the legislative body. *F.D.I.C. v. Sumner Financial Corp.,* 451 F. 2d 898 (5th Cir. 1971).

"The court is not limited to the mere words of a statute or what is expressly declared therein, and that which is in-

---

3. The applicant also contends and the Court of Appeals held that the Commission exceeded its statutory authority in considering the effects of the boat ramp on the property of the adjacent owners since the statute permits it to consider only the effect of the boat ramp on the State's water resources. We disposed of this issue under our discussion of the State's police power. Here, the question is whether the effects of the boat ramp may be considered at all or whether the agency's consideration should be restricted to the effects of dredging and filling.

cidentally necessary to a full exposition of the legislative in-
tent should be upheld as being germane to the law. In the
construction of a grant of powers, it is a general principle of
law that where the end is required the appropriate means
are given and that every grant of power carries with it the
use of necessary and lawful means for its effective execution.
There is therefore conferred by necessary implication every
power proper and necessary to the exercise of the powers
and duties expressly given and imposed." 1 Am. Jur. 2d, Ad-
ministrative Law, § 44, p. 846 (1962).

It is the express policy and intent of the legislature in its
grant of jurisdiction to the Department that it act to conserve our
estuarine resources. G.S. 113-132. The legislature also expressly
granted these administrative bodies the authority to deny a per-
mit when an adjacent riparian owner would be significantly
adversely affected. G.S. 113-229(e)(2). On the application for the
permit the applicant must state the purpose for which the dredg-
ing and filling will occur. Certainly, when the agency knows the
purpose of the dredging activity and there is evidence that it
would cause a significant adverse effect on the estuarine
resources (not from the dredging itself but as a result of the
ultimate purpose of the dredging), then in order to fulfill its
ultimate express statutory objective of conserving our estuarine
resources, the agency has the authority to deny the permit.

The same is likewise true when there is evidence that the
ultimate purpose of the dredging, the end result, will significantly
adversely affect adjacent riparian landowners. In order to fulfill
the purpose of G.S. 113-229(e)(2) to promote the public welfare by
restricting the activities of one riparian owner when adjacent
riparian owners will be adversely affected, the agency has the
authority to deny a permit when there is evidence that the dredg-
ing will adversely affect such owners and when there is evidence
that the end product of the dredging operation will adversely af-
fect such owners.

To hold otherwise would be to unduly hamper the agency's
efforts to achieve its statutory goals and purposes and to deprive
it of a proper and necessary means (denial of a permit application
when the end result of the project is detrimental to the estuarine
resources or the property of any adjacent owners) to achieve the

ultimate policies and goals contained in the legislation (conservation of our estuarine resources and promotion of the public welfare in restricting the activities of riparian owners to prevent detriment to adjacent riparian owners). Furthermore we note that allowing the agency to exercise this authority is not an overbroad and unbounded power. To the contrary, the agency may grant or deny permits only with respect to dredging and filling operations. The possible end results of such an operation are not unlimited. The usual purposes of such activity are to make way for such things as an access channel, a boat basin, a boat ramp or a fill area. In other words, the agency is not concerned with zoning the use of the owner's own property. It is concerned solely with what the owner will do in the estuarine waters adjacent to his property and there is authority to act only when those activities involve dredging and filling.

In addition, even if we were to strike down all of the actions of the Commission in considering the effects of the boat ramp as being in excess of its statutory authority, we would still uphold the Commission's decision. This is true because the application states that the fill from the dredging operation would be placed on the roadbed leading to the site of the boat ramp. The riparian owners presented evidence that this roadbed has already suffered erosion, that the erosion will continue unless adequate drainage measures (that the applicant did not propose to implement) are taken and that the erosion will affect the access area and the property of the riparian owners. Therefore, the adjacent owners' properties will be detrimentally affected by the dredging and filling itself because of the further erosion that will occur. For the above reasons we conclude that the agency acted within its statutory authority and these assignments of error are overruled.

[5] The next issue is whether there is substantial evidence in view of the entire record as required by G.S. 150A-51(5) to support the decision of the review commission to uphold the Department's denial of the permit to the applicant. We hold that there is.

Consideration of the sufficiency of the evidence to support a decision under the whole record test does not allow us to replace the agency's judgment when there are two reasonably conflicting views. However, we are required to take into account the

In re Community Association

evidence supporting the agency's decision as well as the evidence that detracts from the weight of that evidence and its decision. *Thompson v. Wake County Board of Education*, 292 N.C. 406, 233 S.E. 2d 538 (1977).

The record properly shows the review commission's ruling with respect to each proposed finding and conclusion submitted by the parties as required by G.S. 113-229(g)(7). In view of the entire record, there is ample evidence to support the major findings of the Commission that: (1) the erosion will continue, (2) there are no parking facilities nor adequate turnaround room in the access area, (3) there would be traffic congestion, noise and litter, (4) the proposals for maintenance of the boat ramp are inadequate, and (5) the value of the property of the adjacent riparian landowners would be significantly adversely affected. (Numbering ours.) These findings support the conclusions that the applicant did not carry its burden of showing that the Department's denial of the permit was contrary to the law and the facts and that the permit was properly denied under G.S. 113-229(e)(2). Therefore, these assignments of error are overruled.

The next issue is whether the Department or the review Commission acted arbitrarily or capriciously. Since the administrative bodies acted in accordance with the applicable statute which we find to be proper and constitutional in all respects and since the Commission applied an objective standard for determining whether there was a significant adverse effect on the value and enjoyment of the property of the adjacent owners, we find no arbitrary or capricious actions by either the Department or the review Commission. These assignments of error are overruled.

The last issue is whether the trial judge erred in signing the judgment he entered in this case. For all of the reasons discussed above, the trial judge was correct in all respects in affirming the decision of the Commission. Therefore, his judgment was properly signed and entered. These assignments of error are overruled.

The Court of Appeals is reversed and the judgment of the trial judge is reinstated.

Reversed.

Justice EXUM dissenting in part.

I dissent from that portion of the majority opinion which con-
cludes that G.S. 113-229(e) authorized the denial of a dredge or fill
permit upon a finding that the value and enjoyment of riparian
owners' property will be affected not by the dredging and filling
itself but by the nature of the project which the dredging and fill-
ing is designed to facilitate.

There is scant mention in the majority opinion of the
evidence offered before the Marine Fisheries Commission (Com-
mission) and the real basis for the objection of the appellant
Rugumak, Ltd. This evidence is adequately summarized in the
opinion of the Court of Appeals. The application for the dredge
and fill permit was made by the Broad and Gales Creek Communi-
ty Association for the purpose of constructing a public boat
launching ramp. Thirty-four witnesses, living in the area of the
ramp, appeared to support the project. Rugumak, Ltd., offered
four witnesses, each of whom owned a one-fourth undivided in-
terest in the Rugumak property adjacent to the proposed ramp.
One of these expressed concern about people parking on his prop-
erty and littering in the area. Another stated that she was wor-
ried about the litter and feared early morning noise which would
preclude her sleeping late. Another witness testified that she was
afraid of "some of the characters . . . that would come in and use
[a public ramp]" and that the dogs in the neighborhood "would
bark like mad" when strangers came in. Another witness ex-
pressed concern about losing her privacy. She said the boat ramp
"will ruin what used to be private sunbathing and swimming" and
that the noise would be detrimental to the enjoyment of her prop-
erty. There was some concern about drainage and erosion prob-
lems on a dirt road leading to the ramp although all conceded that
the Association had adequately maintained the road in the past.
None of these four witnesses lived full time on the property. They
vacationed there periodically.

There was no evidence that the *dredging and filling opera-
tion itself* would have any adverse effect on the enjoyment or
value of the riparian owners' property. While the majority notes
that "the application states that the fill from the dredging opera-
tion would be placed on the roadbed leading to the site of the
boat ramp" and there was some evidence that the roadbed was

eroding, there is no evidence that placing the fill on the road would exacerbate the erosion. Indeed, the likelihood is that this would tend to combat whatever erosion preexisted this proposed dredging and filling operation.

It is clear that the objections of the riparian owners were not to the dredging and filling operation itself. Their objection was to the installation of a public boat ramp on Broad Creek. It is also clear that the Commission did not direct its attention to the effect of the dredging and filling; it denied the permit because of what it perceived to be the additional congestion, noise, and litter which would be caused in the area by a public boat ramp. In doing this, I believe the Commission exceeded its statutory authority.

G.S. 113-229(e) provides, in pertinent part:

"The Department may deny an application for a dredge or fill permit upon finding: (1) that there will be significant adverse effect *of the proposed dredging and filling* on the use of the water by the public; or (2) that there will be significant adverse effect on the value and enjoyment of the property of any riparian owners; or (3) that there will be significant adverse effect on public health, safety, and welfare; or (4) that there will be significant adverse effect on the conservation of public and private water supplies; or (5) that there will be significant adverse effect on wildlife or freshwater, estuarine or marine fisheries. In the absence of such findings, a permit shall be granted." (Emphasis supplied.)

I am satisfied that the limiting language — "of the proposed dredging and filling" — was intended by the Legislature to apply not only to finding (1) but also to findings (2), (3), (4), and (5). The inquiry should be addressed to the effect of the proposed dredging and filling itself, not, as here, to the effect of whatever ultimate project the dredging and filling is designed to facilitate. This is so because the Marine Fisheries Commission's (and now the Coastal Resources Commission's, *see* G.S. 113-229(f) (Supp. 1979)) expertise lies in the management of our estuarine resources. The Commission is not, as the majority notes in other portions of its opinion, a super zoning commission with authority to regulate generally the use of land. The majority itself notes, "the statute concerns what landowners may do as far as dredging and filling [in estuarine waters], which belong to the people of this State,

G.S. 113-131, and not what they may or may not do on their own land." I thoroughly agree. The difficulty here is, however, that the Commission undertook to determine what the Broad and Gales Creek Community Association could do with its own property.

The gravamen of Rugumak's objection is that the use contemplated by the Community Association, to-wit, a public boat ramp, would constitute a private nuisance. If this is so, adequate redress lies in the courts. It does not, I submit, lie with the Department of Natural Resources and Community Development.

For this reason, I vote to affirm the decision of the Court of Appeals.